Maurice DAVIS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–0211–CR–561.

Court of Appeals of Indiana.

July 11, 2003.

Rehearing Denied Sept. 4, 2003.

Aaron E. Haith, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellant–Defendant, Maurice Davis (Davis), appeals his conviction for posses-

sion of cocaine with intent to deliver, a Class A felony, Ind.Code § 35–48–4–1.

We affirm.

### ISSUES

Davis raises two issues on appeal, which we restate as follows:

1. Whether the trial court properly admitted Indianapolis Police Department Drug Task Force Sergeant Steven Kinkade's testimony into evidence; and

2. Whether the State presented sufficient evidence to support his conviction for possession of cocaine with the intent to deliver.

### FACTS AND PROCEDURAL HISTORY

On June 28, 2001, Indianapolis Narcotics Detective Steven Gorgiveski (Detective Gorgiveski) and Indianapolis Police Department Officers Ball, Brannon, and Campbell worked a special detail in the area of Broadway and College Avenue in Indianapolis, Indiana due to a high number of complaints for gambling and narcotic sales. Specifically, Detective Gorgiveski and Officer Ball responded to a report of narcotic sales on Broadway near 30th Street.

When Detective Gorgiveski and Officers Ball, Brannon, and Campbell arrived at a house located at 3048 Broadway, they observed a group of six or seven people drinking. After watching the subjects bend or crouch down for a while, the officers also believed that they were gambling. Detective Gorgiveski and Officer Ball approached the group of people, while Officers Campbell and Brannon positioned themselves behind the car. At this time, Davis stood up and the officers heard the dice hit the ground. Davis also dropped two clear plastic baggies, containing a sub-

stance suspected to be cocaine, and a bottled water. Additionally, there was an assortment of U.S. currency on the ground near the two plastic baggies of cocaine, bottled water, and dice.

As a result, Detective Gorgiveski arrested Davis. Davis advised Detective Gorgiveski that the contraband did not belong to him and that he was on probation. The evidence, *i.e.,* cocaine, money, and bottled water, was photographed. Eventually, the suspected cocaine was transported to the narcotics vault. After stipulation from both parties, the substance was identified as cocaine, with a total weight of 5.6225 grams.

On June 29, 2001, the State filed an information against Davis charging him with Count I, possession of cocaine with intent to deliver, a Class A felony, I.C. § 35–48–4–1, and Count II, possession of cocaine, a Class C felony, I.C. § 35–48–4–6. On September 5, 2002, Davis waived his right to trial by jury. On September 9, 2002, a bench trial was held. The trial court found Davis guilty as charged and merged Count II into Count I for sentencing. On October 25, 2002, Davis was sentenced to the Indiana Department of Correction for a period of forty years.

Davis now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Admissibility of Sergeant Kinkade's Testimony*

Davis argues that the trial court erred by admitting Kinkade's testimony into evidence. Specifically, Davis maintains that Kinkade was not a qualified expert witness under Indiana Evidence Rule 702. Therefore, Davis asserts that the trial court erred by allowing Kinkade to express his opinion as to Davis' thinking or intent with respect to the cocaine.

▪ The admission of evidence is within the sound discretion of the trial court. *Simmons v. State,* 760 N.E.2d 1154, 1158 (Ind.Ct.App.2002). The decision whether to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Id.; Spires v. State,* 670 N.E.2d 1313, 1315 (Ind.Ct. App.1996). In determining the admissibility of evidence, the reviewing court will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Simmons,* 760 N.E.2d at 1158.

▪ In the instant case, we find that the trial court properly overruled Davis' objection to Kinkade's testimony. Here, Kinkade testified as a "skilled" witness rather than an "expert" witness. A "skilled" witness is defined as "a person with a degree of knowledge short of that sufficient to be declared an expert under Indiana Rule of Evidence 702, but somewhat beyond that possessed by the ordinary jurors." *O'Neal v. State,* 716 N.E.2d 82, 88–9 (Ind.Ct.App. 1999).[1]

▪ Under Ind. Evid. R. 701, a skilled witness may testify to an opinion or inference that is:

(a) rationally based on the witness's perception, and

(b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

*Haycraft,* 760 N.E.2d at 211. The requirement that the opinion be "rationally based" on perception simply means that the opinion must be one that a reasonable person could normally form from the perceived facts. *Id.; Hanson v. State,* 704 N.E.2d

---

1. Ind. Evid. R. 702 provides, "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." *See Haycraft v. State,* 760 N.E.2d 203, 210 (Ind.Ct.App.2001).

152, 155 (Ind.Ct.App.1999). The requirement that the opinion be "helpful" means, in part, that the testimony gives substance to facts, which are difficult to articulate. *Id.*

■ Here, the State developed a foundation to establish Kinkade's qualifications to testify about Davis' possession of cocaine with intent to deliver. At the time of Davis' trial, Kinkade had been with the Indianapolis Police Department for sixteen years. During his sixteen years on the force, six and one-half years were spent specifically on investigating narcotics crimes. In fact, Kinkade was the detective in charge of the North District Narcotics Unit. He received special training in narcotics that included schooling for the detection and affects of ecstasy, methamphetamine, cocaine, marijuana, and club drugs. Further, Kinkade was involved in approximately 600–700 narcotics investigations, the majority of which involved cocaine. Moreover, the record shows that the trial court overruled Davis' objection to Kinkade's testimony because, "it is relating to the types of investigations he has been in ... the training he has received and the years of experience all relay to me the conclusion that he is capable of forming an opinion as to what someone with the quantity package and that weight would intend to do with it...." (Transcript p. 33). Given this background, we find that Kinkade was sufficiently qualified to testify as a skilled witness. *See O'Neal,* 716 N.E.2d at 88–9; *Haycraft,* 760 N.E.2d at 211.

Further, Kinkade testified that his opinions and inferences were based on his personal experience as an investigator; thus, his testimony was rationally based on his perception. His testimony was helpful in determining the issue of intent to deliver because Kinkade established the distinct characteristics that differentiate between a drug user and a drug dealer. Specifically,

Kinkade testified that drug users generally do not have large amounts of drugs on them. He stated that usually drug users buy $10 to $20 "rocks" of cocaine that weigh approximately .10 grams and immediately smoke it. (Tr. pp. 31, 33, 35). Conversely, the record reflects that Kinkade testified that drug dealers generally carry larger amounts of cocaine on them.

In this case, Davis discarded two plastic baggies of cocaine, each containing an "eight ball" or approximately forty-five rocks of cocaine that were individually wrapped or "bindled." (Tr. pp. 34). Kinkade concluded from his training and experience that the cocaine was packaged for dealing because it was uncommon for a drug user to carry the amount of cocaine that Davis possessed. The record also indicates that no paraphernalia used to smoke cocaine was found on Davis or near the scene. Clearly, Kinkade's testimony gave substance to facts that were otherwise difficult to articulate. In particular, Kinkade's testimony was helpful to determine the intent element of the charge for possession of cocaine with intent to deliver. As such, we find that the trial court did not abuse its discretion in admitting Kinkade's testimony as a skilled witness. *See Simmons,* 760 N.E.2d at 1158; *Haycraft,* 760 N.E.2d at 211.

## II. *Sufficiency of the Evidence*

■ Davis contends that the State failed to present sufficient evidence to support his conviction. Specifically, he argues that the State failed to establish that he possessed cocaine with the intent to deliver.

■ Our standard of review for sufficiency claims is well settled. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or assess the credibility of witnesses. *Cox v. State,* 774 N.E.2d 1025, 1028–29 (Ind.Ct. App.2002). We consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences

that can be drawn therefrom. *Alspach v. State,* 755 N.E.2d 209, 210 (Ind.Ct.App. 2001), *trans. denied.* The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Cox,* 774 N.E.2d at 1028–29. A judgment may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt. *Maul v. State,* 731 N.E.2d 438, 439 (Ind.2000).

Indiana Code Section 35–48–4–1(a)(2)(C)(b)(1), in pertinent part, states:
A person who possesses, with intent to deliver cocaine, a narcotic drug, or methamphetamine, pure or adulterated, classified in schedule I or II; commits dealing in cocaine, a narcotic drug, or methamphetamine, a Class A felony if the amount of the drug involved weighs three (3) grams or more.

Therefore, to convict Davis for possession of cocaine with intent to deliver, a Class A felony, the State was required to prove beyond a reasonable doubt that Davis possessed cocaine in an amount greater than three grams with intent to deliver it. *See* I.C. § 35–48–4–1(a)(2)(C)(b)(1).

■ In the present case, the record reveals that Detective Gorgiveski and Officers Ball, Brannon and Campbell responded to complaints for gambling and narcotic sales in an area near Broadway and College Avenue. Detective Gorgiveski and Officers Ball, Brannon, and Campbell saw Davis drop two plastic baggies containing cocaine. Thereafter, Davis was arrested for possessing approximately 5.6225 grams of crack cocaine with intent to deliver. "Circumstantial evidence showing possession with intent to deliver may support a conviction. Possessing a large amount of a narcotic substance is circumstantial evidence of intent to deliver. The more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally." *Love v. State,*

741 N.E.2d 789, 792 (Ind.Ct.App.2001) quoting *Berry v. State,* 574 N.E.2d 960, 963 (Ind.Ct.App.1991) (citations omitted), *trans. denied.*

■ Here, the evidence on the record shows that Davis intended to deliver the cocaine he possessed. Intent, being a mental state, can only be established by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn from them. *See Love,* 741 N.E.2d at 792. As stated above, Kinkade's testimony distinguished the general characteristics of drug users and drug dealers. Specifically, Kinkade testified that drug users generally possess a $10 to $20 rock that weighs approximately .10 grams. However, Kinkade stated that drug dealers typically carry relatively large amounts of cocaine including large numbers of rocks. In the instant case, Davis possessed more than three grams of cocaine. He possessed 5.6225 grams of cocaine. According to Kinkade's testimony, this amount is consistent with an amount possessed by a dealer, rather than for strictly personal use. Further, the cocaine was individually wrapped in forty-five bindles, creating the inference that the cocaine was packaged for sale rather than for personal use. Evidence of the illegal possession of a relatively large quantity of drugs is sufficient to sustain a conviction for possession with intent to deliver. *Hazzard v. State,* 642 N.E.2d 1368, 1369 (Ind.1994). Due to the amount of cocaine that Davis possessed compared to the amount a drug user would typically use, and the fact that the rocks were individually wrapped, we find that the State presented sufficient evidence to sustain Davis' conviction for possession of cocaine with intent to deliver. *See Love,* 741 N.E.2d at 792; I.C. § 35–48–4–1(a)(2)(C)(b)(1).

With the above in mind, we reject Davis' invitation to reweigh the evidence. It is

the trier-of-fact's prerogative to weigh the credibility of the witnesses and to weigh the evidence. *Stephenson v. State,* 742 N.E.2d 463, 499 (Ind.2001). Because there is substantial evidence of probative value supporting Davis' convictions, we will not reverse the conclusion of the trier of fact. *See Cox,* 774 N.E.2d at 1028–29.

### CONCLUSION

Based on the foregoing, we conclude that the trial court committed no error in allowing Kinkade's testimony as a skilled witness. *See Simmons,* 760 N.E.2d at 1158. Further, we conclude that Davis was properly convicted of possession of cocaine with intent to deliver as a Class A felony. *See Cox,* 774 N.E.2d at 1028–29.

Affirmed.

SHARPNACK and BARNES, JJ., concur.