Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 24 2014, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIC K. KOSELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CARLTON HILLMAN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1305-CR-241 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven Eichholtz, Judge
Cause No. 49G20-1206-FA-39940

**January 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Carlton Hillman appeals his convictions for Class A felony dealing in cocaine and Class B felony dealing in a narcotic drug. He argues that the evidence is insufficient to establish that he intended to deliver the cocaine and heroin he possessed when he was arrested. Finding the evidence sufficient to sustain his convictions, we affirm.

**Facts and Procedural History**

On an evening in June 2012 at approximately 7:00 p.m., Detective Richard Wilkerson and other Indianapolis Metropolitan Police Department officers, as part of a narcotics investigation, were searching for Hillman in the vicinity of 38th Street and Boulevard Place in Indianapolis. According to police, the area is a high-crime area known for drug-trafficking activities. The officers eventually went to a residence at 3841 Rookwood Avenue.

When Detective Wilkerson approached the porch, before announcing his presence, he saw Hillman. Hillman was lying on his back on the porch and his hands were over his head with his right hand underneath the cushion of the chair closest to him.

Detective Wilkerson identified himself and commanded Hillman to show his hands. Hillman took his right hand out from underneath the cushion and stuck it in his right pocket. Detective Wilkerson yelled at him to take his hand out of his pocket and show his hands. Hillman took his hand out of his pocket and stuck it back underneath the cushion. When Detective Wilkerson again commanded Hillman to show his hands, Hillman complied.

Once Hillman was handcuffed, Detective Wilkerson went to the chair where Hillman was placing his hand underneath the cushion. When he moved the chair cushion,

2

a bag of drugs fell to the ground underneath the chair. Laboratory tests of the drugs showed that the bag contained 21.7261 grams of crack cocaine and 1.708 grams of powdered heroin. Ex. 12.

The officers then searched Hillman and found three cellular phones and $627 dollars in cash in his front left pocket. The cash consisted of four $50 bills, nineteen $20 bills, three $10 bills, three $5 bills, and two $1 bills, all folded together. The officers did not recover any pipes or needles consistent with the use of cocaine or heroin. Moreover, Hillman did not have any track marks on his arms, burned lips, or burned fingertips.

The State charged Hillman with Class A felony dealing in cocaine, Class C felony possession of cocaine, Class B felony dealing in a narcotic drug, and Class D felony possession of a narcotic drug. Appellant's App. p. 24.

A jury trial was held. At trial, Detective Jeremy Ingram, a narcotics investigator for over ten years, testified. He explained that drug dealers typically have multiple prepaid cellular phones, using one for personal use and others for their drug business. According to Detective Ingram, these prepaid phones can be disposed of easily and cannot be traced to the drug dealer using them.

Detective Ingram also testified about the amount of money found on a drug dealer. Generally, cocaine dealers carry money in smaller denominations, such as $20 or $10 bills. Detective Ingram also testified that dealers will sell crack cocaine in tenth-of-gram quantities.

Detective Ingram also explained the significance of the amount of money and cocaine found on Hillman when he was arrested. The amount of cocaine found on Hillman

3

was 21.7261 grams, or about 6.3 grams short of an ounce. According to Detective Ingram, if Hillman had started with one ounce and sold it at $100 per gram, he would have about $630 of cash in his possession.

Detective Ingram also testified about the characteristics of crack-cocaine and heroin users. Crack-cocaine dealers that use the crack cocaine have burned and charred fingers, blackened fingernails, blackened fingers, burns on the lips, and burns on the tongue. Heroin users have "very peaked skin, loss of teeth, track marks, easily bruising from so much use of the vein." Tr. p. 182. Moreover, "[a] heroin user is going to want to use several times a day. Bruising, bleeding, very poor hygiene." *Id.*

According to Detective Ingram, a heroin dealer typically has a much smaller amount of heroin than cocaine on his person because it is so addictive. Detective Ingram testified that he has never seen a heroin user have enough money to buy several grams of heroin at once.

In Detective Ingram's opinion, having $627 in cash, 21.7 grams of crack cocaine, 1.7 grams of heroin, and no signs indicating personal use of crack cocaine or heroin, is consistent with a person who is dealing in cocaine and heroin.

The jury found Hillman guilty of all charges. *Id.* at 244-45. The trial court entered judgments of conviction on Class A felony dealing in cocaine and Class B felony dealing in a narcotic drug. *Id.* at 246-47. The trial court sentenced Hillman to an aggregate term of thirty years with twenty years executed in the Department of Correction and ten years suspended to probation. *Id.* at 260.

Hillman now appeals.

4

## Discussion and Decision

Hillman argues that the evidence is insufficient to sustain his convictions for Class A felony dealing in cocaine and Class B felony dealing in a narcotic drug. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012). We look solely to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* A conviction will be affirmed if the probative evidence and reasonable inferences to be drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. *Id.*

Class B felony dealing in cocaine or dealing in a narcotic drug occurs when a person possesses cocaine or a narcotic drug with the intent to deliver. Ind. Code § 35-48-4-1(a)(2)(C). The offense is elevated to a Class A felony if the amount of the drug involved weighs three grams or more. I.C. § 35-48-4-1(b)(1).

Hillman argues that the evidence is not sufficient to prove that he had the intent to deliver the cocaine and heroin he possessed when he was arrested. Circumstantial evidence of a defendant's intent to deliver cocaine or another narcotic is sufficient to prove that element of the offense. *Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003), *reh'g denied, trans. denied*. Additionally, "[t]he more narcotics a person possesses, the stronger the inference that he intended to deliver it and not consume it personally." *Id.* (quoting *Love v. State*, 741 N.E.2d 789, 792 (Ind. Ct. App. 2001)).

In this case, the evidence most favorable to the verdict suggests that Hillman possessed crack cocaine and heroin with the intent to deliver it. When Hillman was

5

arrested, police officers found 21.7261 grams of cocaine, 1.708 grams of heroin, $627 in cash, and three cellular phones.

The amount of drugs found, alone, is sufficient evidence that Hillman intended to deliver cocaine and heroin. According to Detective Ingram, crack-cocaine dealers generally sell an ounce, which is approximately 28 grams, of crack cocaine to various customers. An ounce produces 140 dosage units. Tr. p. 179. Here, Hillman had in his possession 21.726 grams.

Similarly, Detective Ingram testified that 1.708 grams of heroin would produce between seventeen and thirty-five dosage units "without putting any type of cut or any type of procaine or anything on it to stretch that out at all." *Id.* at 185-86. According to Detective Ingram, a heroin user generally has only two to three dosage units in their possession at one time. *Id.* at 186. Hillman had approximately seventeen dosage units on him when he was arrested. These amounts of crack cocaine and heroin are significantly higher than the amount he would need for his own personal consumption. For this reason, Detective Ingram concluded that Hillman intended to sell heroin rather than consume it. *Id.* at 187.

Moreover, Hillman had in his possession $627 in mostly small bills. The amount of money in Hillman's possession was significant because Detective Ingram testified that crack cocaine is typically sold at a rate of $100 per gram. Because Hillman had approximately 6.3 grams less than an ounce of heroin and approximately $630 in cash in his possession, Detective Ingram concluded that Hillman was dealing in crack cocaine.

Hillman argues that he did not have the intent to distribute crack cocaine or heroin because the State did not present evidence of guns, scales, baggies, or any tools that could be used to cut crack cocaine or heroin. Appellant's Br. p. 6-7.

However, other circumstantial evidence suggests that Hillman intended to distribute crack cocaine and heroin. When Hillman was searched, the police found three cellular phones on his person. According to Detective Ingram, drug dealers usually have multiple cellular phones to separate personal phone calls from business phone calls.

Moreover, Detective Ingram testified that crack cocaine users usually have burned and charred fingers, blackened fingernails, burns on the lips, burns on the tongue, and lost teeth. Tr. p. 175-76. Heroin users usually have very peaked skin, loss of teeth, track marks, bruising, bleeding, and very poor hygiene. *Id.* at 182. Detective Wilkerson specifically testified that he did not notice any burned lips, burned fingertips, or track marks. *Id.* at 63. Hillman did not exhibit the characteristics of someone who was using the crack cocaine or heroin, further supporting the jury's conclusion that he intended to distribute both crack cocaine and heroin.

Hillman also argues that there was no evidence presented showing that he did not have some of the characteristics of a crack-cocaine or heroin user. Appellant's Br. p. 6-7. Although there was no evidence regarding the condition of Hillman's teeth or whether he had a burnt tongue, both Detective Wilkerson and Detective Scott Wolfe specifically testified that they did not notice any burned lips, burned fingertips, or track marks on his arms. *Id.* at 63, 143. As to Hillman's argument that he would not have had track marks if he had ingested the heroin by snorting or smoking it, it is simply a request for this Court to

reweigh the evidence, which we may not do. The evidence is sufficient to prove that Hillman intended to distribute cocaine and heroin.

Affirmed.

RILEY, J., and MAY, J., concur.