## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 29 2016, 8:16 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Deandre Moore,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 29, 2016

Court of Appeals Case No.
82A04-1511-CR-1922

Appeal from the Vanderburgh Circuit Court

The Honorable Michael J. Cox, Magistrate

Trial Court Cause No.
82C01-1509-F3-5620

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Deandre Moore was convicted of armed robbery, criminal confinement while armed with a deadly weapon, attempted armed robbery, attempted battery by means of a deadly weapon, and pointing a firearm at another person. The trial court sentenced Moore to an aggregate sentence of twenty years in the Indiana Department of Correction. Moore appeals his convictions, raising two issues for our review, which we restate as: (1) whether the trial court erred in admitting certain evidence, and (2) whether the trial court erred in not giving a discrete answer to two questions from the jury during deliberations. Concluding the trial court did not err in admitting evidence and in not providing a discrete answer to the jury's questions, we affirm.

# Facts and Procedural History

[2] Around 7:00 p.m. on December 22, 2014, an individual, with part of his face masked, entered a St. Vincent de Paul thrift store in Evansville, pointed a gun at store employee Asuncion Gibson, and ordered Gibson to open the cash register. When Gibson was unable to open the register, the individual attempted to discharge his weapon, but it jammed. The individual immediately fled the scene. Sandra Lohman, another store employee, described the individual as 5'7" or 5'8" tall, noting he had pretty eyes, but Gibson described the individual's eyes as "mean" and "dark." Transcript at 716, 725.

[3]     Seven hours later, an individual, with part of his face masked, entered a Kangaroo Express gas station in Evansville, pointed a gun at store employee Amy Webster, forced her to the back of the gas station, and demanded money. The individual also pointed his weapon at Donald Wineinger, another store employee. Webster gave the individual approximately $350 from the cash register. After a customer threatened to call police, the individual fled the scene. Webster described the individual as 5'3" or 5'4" with "pretty" and "dark" eyes. *Id.* at 313, 318. Wineinger described the individual as 5'10" tall. Reid Craig, a customer present during the robbery, believed the individual stood between 5'5" and 5'9".

[4]     On January 11, 2015, Webster recognized the individual who robbed the gas station, later identified as Moore, at a plasma donation center based on Moore's eyes, voice, and build. Webster immediately called police and Moore was detained. The following exchange occurred between Moore and an investigator regarding Webster's claim Moore was the individual who robbed the gas station:

> [Investigator:]  Well, like I told you, when you were at the Plasma Center while you was in there she said that you were the one that robbed her back on December the 23rd.
> [Moore:]  Well, that's not possible.
> [Investigator:]  Well, that's what, that's what she is saying.
> [Moore:]  Did I rob her barefaced?
> [Investigator:]  Huh?
> [Moore:]  Did I rob her barefaced, did she see my face?
> * * *
> [Moore:]  Did she see my face, that's what you should ask her.

[Investigator:] She said she looked you in the face.
[Moore:] She looked me, I was barefaced when I robbed her?
[Investigator:] She said she looked you in the face.
[Moore:] Well, you should watch the video and see.

*Id.*at 536, 547-48; State's Exhibit 37. Later, Lohman "immediately" identified Moore as the would-be robber of the thrift store from a photo array. Tr. at 637.

In addition, Moore called his mother while in jail and the following exchange occurred between Moore, his mother, and an unidentified individual:

[Unidentified Voice:] Well you know, they ain't got no, they ain't got no cameras nothing for (inaudible).
[Moore:] Yes it does, they say they got, they said (inaudible) camera so I said (inaudible), I was like she wanted to see my face or something, I mean, did you ever ask me, did you look at the camera, he said yeah I looked at the camera and I said okay so, what did you think, (inaudible) I know she ain't got x-ray vision now do she.

*Id.* at 605; State's Ex. 38. At this point in time, investigators had not released any details of the gas station robbery to the media or to Moore, including whether the suspect obscured his face.

As part of the investigation, Detective Tony Walker worked to estimate the robber's height by reviewing the surveillance video from the gas station. That surveillance video captured images of the robber standing next to a calendar screwed into a wall. Detective Walker measured the height of the calendar from the floor and made markings indicating certain heights. He then used the same surveillance video to capture images of himself standing in the same spot

as the robber. After comparing the images and taking into consideration his own height, Detective Walker estimated the robber's height was between 5'4" and 5'7". Moore is 5'6".

[7] The State charged Moore with armed robbery, a Level 3 felony ("Count 1"); criminal confinement while armed with a deadly weapon, a Level 3 felony ("Count 2");[1] attempted armed robbery, a Level 3 felony ("Count 3"); attempted battery by means of a deadly weapon, a Level 5 felony ("Count 4"); and pointing a firearm at another person, a Level 6 felony ("Count 5").[2] Moore proceeded pro se.

[8] At trial, Webster and Craig identified Moore as the robber of the gas station; Gibson and Lohman identified Moore as the robber of the thrift store. In addition, Detective Walker testified as to the process he used to estimate the robber's height, and in conjunction with his testimony, the State admitted—for demonstrative purposes—surveillance video images from the gas station, images of the measurements taken by Detective Walker, and other exhibits relevant to the robber's height. The State did not call Detective Walker to testify as an expert witness. Moore did not object to Detective Walker's testimony or to the admission of the exhibits.

---

[1] Counts 1 and 2 were with respect to the robbery at the gas station.

[2] Counts 3, 4, and 5 were with respect to the attempted robbery at the thrift store.

At the close of evidence, the trial court instructed the jury as to the attempt crimes, in relevant part:

COURT'S INSTRUCTION NO. 4

* * *

Before you may convict the Defendant in Count 3, the State must have proved each of the following beyond a reasonable doubt:
1. The Defendant, Deandre Blanchez Moore
2. acting with the culpability required to commit the crime of Armed Robbery, which is defined as:
      a) knowingly or intentionally
      b) taking property from another person
      c) by using force or threatening the use of force on that other person
      d) and while the Defendant was armed with a deadly weapon;
3. by knowingly entering St. Vincent Depaul [sic], displaying/and or [sic]pointing a firearm or handgun, and demanding money from St. Vincent Depaul employee Asuncion Gibson and/or Sandra Lohman,
4. which was conduct constituting a substantial step toward the commission of the crime of Armed Robbery.

* * *

COURT'S INSTRUCTION NO. 5

* * *

Before you may convict the Defendant in Count 4, the State must have proved each of the following beyond a reasonable doubt:
1. The Defendant, Deandre Blanchez Moore

2. acting with the culpability required to commit the crime of Attempted Battery by Means of a Deadly Weapon, which is defined as:

      a) knowingly or intentionally

      b) touching another person

      c) in a rude, insolent or angry manner

      d) and while the Defendant was armed with a deadly weapon;

3. by knowingly pointing a firearm and/or handgun at Asuncion Gibson and/or Sandra Lohman, and pulling the trigger to said firearm and/or handgun,

4. which was conduct constituting a substantial step toward the commission of the crime of Attempted Battery by Means of a Deadly Weapon.

Appellant's Appendix at 55-58.

[10] The instructions did not provide a definition of the term "culpability" [3] and Moore did not object to the instructions. During deliberations, the jury sent two questions to the trial court. The transcript does not include the ensuing discussion between the parties and the trial court; the only information in the record regarding the jury's questions is located in the Chronological Case Summary. There, it indicates the jury sought the definition of "culpability," to which the trial court responded, over Moore's unspecified objection, "You have received all of the Court's instructions regarding the law." *Id*. at 6. The jury also asked, "Do all subpoints under element 2 need to be proved in order for deft. to be found guilty in counts 3 & 4?" *Id*. Over Moore's unspecified

---

[3] The trial court's remaining instructions did not include the term "culpability."

objection, the trial court responded, "You have been given all of the Court's instructions regarding the law and they are your best resource." *Id.* The jury returned guilty verdicts on all counts. Moore, with counsel, now appeals.

# Discussion and Decision

## I. Admission of Evidence

### A. Standard of Review

[11] Moore contends Detective Walker's testimony describing the process he used to estimate the robber's height—given in conjunction with the State's admission of certain exhibits—and his ultimate opinion as to the robber's height, constituted inadmissible opinion evidence. A trial court has broad discretion in ruling on the admissibility of evidence. *Turner v. State*, 953 N.E.2d 1039, 1045 (Ind. 2011). Although we generally review the trial court's rulings for abuse of discretion, *id.*, a defendant's failure to raise a contemporaneous objection at trial waives the issue for appeal, *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010). Moore concedes he failed to object to Detective Walker's testimony and the State's exhibits, but argues the admission of the testimony and exhibits constitutes fundamental error. *See* Appellant's Brief at 13. A claim waived by a defendant's failure to object can be reviewed on appeal if the reviewing court determines fundamental error occurred. *Delarosa*, 938 N.E.2d at 694. "The fundamental error exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental

due process." *Mathews v. State*, 849 N.E.2d 578, 587 (Ind. 2006) (quotation marks omitted). The exception is "available only in egregious circumstances." *Brown v. State*, 799 N.E.2d 1064, 1068 (Ind. 2003).

## B.  Detective Walker's Testimony

Moore challenges the admission of Detective Walker's testimony regarding the height of the robber, including the admission of demonstrative exhibits used to illustrate his testimony. A "skilled" witness is defined as "a person with a degree of knowledge short of that sufficient to be declared an expert under Indiana Rule of Evidence 702,[4] but somewhat beyond that possessed by the ordinary jurors." *Davis v. State*, 791 N.E.2d 266, 268 (Ind. Ct. App. 2003) (citation omitted), *trans. denied*. Under Rule 701, a skilled witness may testify to an opinion or inference in those instances where the opinion is "rationally based on the witness's perception" and "helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue." *See id*. Here, Detective Walker testified as to his extensive history as a police officer and investigator. He fully explained the method he used to estimate the robber's height and the State's exhibits helped illustrate that process. In addition, such evidence was relevant to identifying the robber, which was the central issue at trial. We therefore find no error.

---

[4] Rule 702(a) provides, "[a] witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise . . . ."

[13] However, even assuming the trial court erred in admitting such evidence, such error was not fundamental. Multiple eyewitnesses identified Moore as the individual who robbed the gas station and thrift store: Webster spontaneously identified Moore as the robber of the gas station after seeing Moore at the plasma donation center; Craig identified Moore as the robber of the gas station based on Moore's eyes; Gibson identified Moore as the robber of the thrift store based on Moore's voice; and Lohman, after being shown a photo array, identified Moore as the robber of the thrift store. As Moore concedes, evidence of his exact height was not made available to the jury, *see* Appellant's Br. at 25 n.3, and our review of the record indicates that none of the eyewitnesses who identified Moore relied upon his height in identifying him. In addition, many witnesses testified as to their own opinion of the robber's height, meaning Detective Walker's testimony amounted to cumulative evidence of the robber's alleged height. Further, Moore made incriminating statements pertaining to the fact it would be impossible for Lohman to identify him as the robber of the gas station because "she ain't got x-ray vision." Tr. at 605. We therefore conclude the trial court did not commit fundamental error in admitting Detective Walker's testimony and demonstrative exhibits regarding the robber's estimated height. *See Halliburton v. State*, 1 N.E.3d 670, 683 n. 7 (Ind.2013) ("Where evidence of guilt is overwhelming any error in the admission of evidence is not fundamental.").

# III. Jury Questions

## A. Standard of Review

Moore also argues the trial court erred in not providing discrete answers to two questions from the jury during deliberations, a claim which we review for an abuse of discretion. *See Inman v. State*, 4 N.E.3d 190, 201 (Ind. 2014). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Turner*, 953 N.E.2d at 1045.

## B. Discrete Answers

Generally, a trial court should not give any additional jury instructions once deliberations commence. *Fields v. State*, 972 N.E.2d 977, 980 (Ind. Ct. App. 2012), *trans. denied*. "This rule precludes the trial court from giving any special emphasis, inadvertent or otherwise, to a particular issue in the case, and thus avoids the possibility that the additional instruction(s) may tell the jury what it ought to do concerning that issue." *Id.* (citation omitted). However, if a jury desires to be informed as to "any point of law arising in the case" after retiring for deliberations, "the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties." Ind. Code § 34-36-1-6. "The statutory phrase 'any point of law arising in the case' is construed narrowly and mandates that the trial court inform counsel and provide a discrete answer *only* when the jury question points up an error or legal lacuna

[i.e. gap] in the final instructions." *Fields,* 972 N.E.2d at 980 (emphasis added) (citation and some internal quotation marks omitted).

At the outset, we note the final instructions on Counts 3 and 4 tracked the language of Indiana's attempt statute verbatim, and in such cases, we presume the instructions are correct. *See Campbell v. State*, 19 N.E.3d 271, 277 (Ind. 2014) ("[A]n instruction which tracks verbatim the language of a statute is presumptively correct."). Also, the final instructions on Counts 3 and 4 followed, verbatim, Indiana's pattern jury instructions for attempt crimes. *See* Ind. Pattern Jury Instruction (Criminal) 2.0100.

The jury's first question requested the definition of the term "culpability." Contrary to Moore's assertion in his brief, *see* Appellant's Br. at 12, "culpability" is not defined by statute, *see* Ind. Code § 35-41-2-2 (though titled "Culpability," the statute only defines the terms "intentionally," "knowingly," and "recklessly"). Given that there is no statutory definition of "culpability," it would be a risky endeavor for the trial court to attempt to define the term. The jury's second question asked, "Do all subpoints under element 2 need to be proved in order for deft. to be found guilty in counts 3 & 4?" Appellant's App. at 6. Moore does not argue how this question points to an error or legal lacuna in the final instructions, and as noted above, both instructions followed the pattern jury instructions verbatim. Therefore, we are not persuaded the jury's questions point to an error or legal lacuna in the final instructions. Accordingly, we conclude the trial court did not abuse its discretion in not giving a discrete answer to the jury's questions.

# Conclusion

[18]     The trial court did not commit fundamental error in admitting certain evidence or abuse its discretion in not providing a discrete answer to the jury's questions. Accordingly, we affirm Moore's convictions.

[19]     Affirmed.

Najam, J., and Crone, J., concur.