

FILED

Jan 20 2017, 5:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Edgar
J. Edgar Law Offices, Prof. Corp.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher Johnston,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | January 20, 2017<br><br>Court of Appeals Case No.<br>49A04-1603-CR-543<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Kurt Eisgruber, Judge;<br>The Honorable Steven J. Rubick, Magistrate<br><br>Trial Court Cause No.<br>49G01-1504-F5-12421 |

**May, Judge.**

[1] Christopher Johnston appeals the qualification of State's expert called to discuss forensic analysis of social media records and digital trails, and the admission of

that expert's opinion regarding the statistical probability of multiple Facebook accounts belonging to people other than Johnston. We affirm.

## Facts and Procedural History

[2] Johnston met the victim, D.K., in 2012. Johnston proceeded to contact D.K. via phone calls, texts, and social media until 2015. D.K. requested, on several occasions and by various means, that Johnston stop contacting her. He did not. On May 30, 2014, D.K. obtained a protective order against Johnston.

[3] On February 7, 2015, Johnston was arrested after going to D.K.'s home. He claimed to not know D.K. Johnston was served with the protective order on his release from custody. On March 9, 2015, Johnston went to D.K.'s home. D.K. called the police, but they were unable to locate Johnston when they responded. On March 10, 2015, Johnston again went to D.K.'s home, and this time he was arrested.

[4] On April 10, 2015, the State charged Johnston with Level 5 felony stalking[1] for going to D.K.'s residence in March 2015, Level 6 felony stalking[2] for going to D.K.'s residence in February 2015, and two counts of Class A misdemeanor invasion of privacy.[3] The State later amended these charges to add another

---

[1] Ind. Code § 35-45-10-5 (2014).

[2] *Id.*

[3] Ind. Code § 35-46-1-15.1(1) (2014).

count of Level 5 felony stalking for texts and Facebook messages sent between April 2013 and July 2013, and of Level 6 felony stalking for Facebook messages sent between February 2014 and May 2014.

[5] Detectives at the Indianapolis Metropolitan Police Department ("IMPD") analyzed D.K.'s cell phone messages and Facebook account. IMPD officers also analyzed the Facebook accounts alleged to be owned by Johnston under several aliases. The State presented Sergeant Steven Schafer of the IMPD Computer and Digital Forensic Unit to testify as an expert in forensic analysis of social media records and digital trails. Johnston objected to Sergeant Schafer's qualifications as an expert able "to render an opinion as to how any of these Facebook records may or may not be linked together [or] traced back to [Johnston]."[4] (Tr. at 182-83.) The trial court overruled his objection.

[6] Sergeant Schafer explained the importance of "cookies" and internet protocol (IP) addresses. Cookies are "basically something that companies and internet companies will place. It generally gets placed back in a device such as a computer or a phone." (*Id.* at 200-201.) Such cookies are "a marker of sorts that's unique to a particular device." (*Id.* at 201.) If multiple usernames have the same cookie associated with them, "[the users] were using the same device." (*Id.* at 202.) An IP address is a "doorway that any device uses to

---

[4] Johnston did concede Sergeant Schafer was qualified to testify as to the meaning of computer terminology.

access the physical internet." (*Id.*) Multiple users with the same IP address "have to be using the same router or home." (*Id.* at 203.)

[7] Sergeant Schafer testified there were multiple Facebook accounts believed to be Johnston's alias accounts, and those accounts were registered under the names: "James Jordan," (Ex. 24, p. 1), "Chris Stark," (Ex. 25, p. 1), "Sam Hesh," (Ex. 26, p. 1), "Chris Crown," (Ex. 27, p. 1), and "Chris Stone," (Ex. 28, p. 1). Each of those accounts was affiliated with internet cookies that were attached to the same device, and all of the accounts had accessed the internet by the same IP address. During re-direct examination, when the State asked Sergeant Schafer about the likelihood of multiple people using the same device and same IP address to contact D.K. with messages of a similar tone, he said it was less likely than "being struck by lightning while hitting the super lotto and being bitten by a polar bear at the same time." (Tr. at 225) (hereinafter, "Polar Bear Analogy"). Johnston did not object to that statement. The trial court found Johnston guilty on all counts but, due to double jeopardy concerns, did not enter judgment on the invasion of privacy counts.

# Discussion and Decision

## *Expert Qualification*

[8] Johnston claims Sergeant Schafer was not qualified to give his opinion as an expert. A witness is "qualified as an expert by knowledge, skill, experience, training, or education," to testify in the form of an opinion "if scientific, technical or specialized knowledge will assist the trier-of-fact to understand the

evidence or determine a fact in issue." Ind. Evidence Rule 702(a). To qualify as an expert, the subject of a "witness's testimony must be distinctly related to some scientific field, business, or profession beyond the knowledge of the average person, and the witness must have sufficient skill, knowledge, or experience in that area so that the opinion will aid the trier of fact." *Hastings v. State*, 58 N.E.3d 919, 924 (Ind. Ct. App. 2016).

[9] The trial court has broad discretion when qualifying an expert, and we review its decision only for an abuse of discretion. *INS Investigations Bureau, Inc. v. Lee*, 709 N.E.2d 736, 744 (Ind. Ct. App. 1999), *trans. denied*. When reviewing a decision under an abuse of discretion standard, we will affirm if there is any evidence to support the decision. *Sparkman v. State*, 722 N.E.2d 1259, 1262 (Ind. Ct. App. 2000). "It is within the trial court's sound discretion to decide whether a person qualifies as an expert witness. On appeal, we will not substitute our judgment for that of the trial court." *Burnett v. State*, 815 N.E.2d 201, 204 (Ind. Ct. App. 2004) (internal citations omitted), *reh'g denied*.

[10] Johnston argues the trial court abused its discretion in qualifying Sergeant Schafer as an expert in "a field of study which is highly technical and therefore susceptible to misunderstanding, confusion, and error," (Appellant's Br. at 16), when Sergeant Schafer did not have the requisite training in statistics to form a valid opinion about the probability of an event. However, the State did not present, and the trial court did not declare, Sergeant Schafer to be an expert in statistics. Rather, he was qualified as an expert in forensic analysis of social media records and digital trails.

Sergeant Schafer testified he had gone to training with the

> Secret Service down in Alabama on internet investigations . . .
> classes that were put on by Lieutenant Charles Cohen, who is the
> commander of the Indiana State Police cyber crimes unit . . .
> several just small classes . . . a great deal of online training
> through the internet [sic] training through the Internet Crimes
> Against Children . . . as well as approximately three to five years
> of on-the-job training.

(Tr. at 179.) He also gave extensive examples of the work he has done with social media accounts, the analysis undertaken with that information, and how users of social media are identified. He estimated he had requested records and analyzed them in "easily 300-plus" cases. (*Id*. at 181.) Thus, we cannot say the court abused its discretion in qualifying Sergeant Schafer as an expert capable of helping the court understand the evidence regarding internet technology and social media. *See Armstrong v. State*, 22 N.E.3d 629, 642 (Ind. Ct. App. 2014) (officer's training and experience qualified him to testify as an expert on gang activity), *trans. denied*.

### Admission of the Polar Bear Analogy

Johnston also argues the trial court erred by allowing Sergeant Schafer to give an opinion on statistical probability. Specifically, Johnston challenges Sergeant Schafer's testimony that multiple people using the same device and same IP address to contact D.K. with Facebook messages of a similar tone was less likely than "being struck by lightning while hitting the super lotto and being

bitten by a polar bear at the same time."[5] (Tr. at 225.) The State gave Sergeant Schafer an opportunity to explain that analogy:

> State: Can you describe that physically, what something like that would look like? Not to be struck by lightning and being bit by a polar bear, but you know what I'm talking about.
>
> Sergeant Schafer: You'd have to have somebody for - like the IP address as well as the cookie to have the same phone and to access Facebook on that phone and then to find somebody, hand them the phone, and then that person would have to use that phone to access Facebook, create an account, and then so on and so forth through, at least in this scenario right here, five different people sitting in front of me, all - and the primary link between all five of them as shown in the pages is messages all being sent to one end person or one end person, the [D.K.] account.
>
> So again, statistically speaking, I mean, that's, you know, the odds of that, you know, everybody using the same exact device with the exact same IP address over the same time period just, I mean, buy a lottery ticket. You've got a better chance.

(*Id.* at 225) (errors in original).

---

[5] Johnston complains the Polar Bear Analogy was not based on "reliable scientific principles." (Appellant's Br. at 21.) As evidence thereof, Johnston points to the fact that Sergeant Schafer did not use the "typical and artful language of the field." (*Id.* at 18.) However, as the State notes, Sergeant Schafer was not attempting to express the result of a formal statistical analysis but rather to provide an analogy to help the trial judge understand how unlikely it was for more than one person to have sent the messages at issue.

[13] Admission of opinion testimony is within the discretion of the trial court. *Julian v. State,* 811 N.E.2d 392, 399 (Ind. Ct. App. 2004), *trans. denied.* The court must be "satisfied that the expert testimony rests upon reliable scientific principles" in order to admit the testimony. Ind. R. Evid. 702(b). A decision to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Davis v. State,* 791 N.E.2d 266, 268 (Ind. Ct. App. 2003), *reh'g denied, trans. denied.* In determining the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor. *Id.*

[14] However, Johnston did not object at trial to the Polar Bear Analogy, so he now claims fundamental error that denied him a fair trial. Appellate courts may, on rare occasions, resort to the fundamental error exception to address on direct appeal an otherwise procedurally defaulted claim. *Jewell v. State,* 887 N.E.2d 939, 942 (Ind. 2008). But fundamental error is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, where the harm or potential for harm cannot be denied, and when the violation is so prejudicial to the rights of the defendant as to make a fair trial impossible. *Id.* Johnston cannot meet that standard.

[15] First, Johnston was tried to the bench, not a jury. As such, we give due consideration to the presumption of judicial-temperance. *See Coleman v. State,* 558 N.E.2d 1059, 1062 (Ind. 1990) (during a bench trial, we presume the "court renders its decisions solely on the basis of relevant and probative evidence"), *reh'g denied.* To rebut this presumption, Johnston would need to demonstrate

prejudice, but Johnston did not argue the trial court relied on Sergeant Schafer's statement. *See Hinesley v. State*, 999 N.E.2d 975, 988 (Ind. Ct. App. 2013) (if trial court does not rely on disputed evidence, the appellant "fail[s] to rebut the judicial-temperance presumption"), *reh'g denied, trans. denied*.

[16] Second, the Polar Bear Analogy is relevant to only one of Johnston's four stalking convictions,[6] and other evidence was sufficient to support that conviction. Sergeant Schafer testified all six Facebook user names – "Cino Cassie" and the five others believed to belong to Johnston – shared "common IP addresses." (Tr. at 214.) He testified to the "commonalities" of "several different cookies that were . . . used by different accounts." (*Id.*) When asked about common cookies associated with different accounts, he explained that "based on [his] training and experience," it indicates the "users used the same device." (*Id.*) For example, in Exhibit 25, pages 6, 7, and 8, the Facebook printout shows "an example of various users associated with a particular machine[.]" (*Id.* at 215.)

[17] The State asked Sergeant Schafer's opinion whether, definitively, these messages were all sent to D.K. by the same person. Johnston objected, and the trial court prohibited Sergeant Schafer from answering that question. Instead,

[6] The first and second counts alleged Johnston had gone to D.K.'s home in February 2015 and March 2015. The third count is supported by text messages from Johnston's phone to D.K. and Facebook messages to D.K.'s Facebook account from the "Cino Cassie" Facebook account that Johnston concedes is his. (*See* Tr. at 28 wherein Johnston's counsel agrees the "Cino Cassie" user name is Johnston's but does not agree as to the other user names.) Only the fourth count of stalking is based solely on Facebook messages sent from Facebook user names that Johnston asserts are not his.

the trial court was left to draw its own conclusions from the evidence, and the record suggests the trial court took the time to do just that. (*See* Tr. at 275) (When announcing its ruling, the trial court stated: "Over the weekend, I reviewed all of the text messages and all of the Facebook messages that were submitted."). Given the evidence in the record, the presumption of judicial-temperance, and the fact Johnston did not present any evidence demonstrating prejudice, Johnston has not demonstrated fundamental error in the admission of Sergeant Schafer's Polar Bear Analogy. *See, e.g.*, *Newbill v. State*, 884 N.E.2d 383, 398 (Ind. Ct. App. 2008) (no abuse of discretion in the admission if fundamental error not proven), *trans. denied*.

# Conclusion

[18] The trial court did not abuse its discretion in qualifying Sergeant Schafer as an expert, and Johnston has not demonstrated fundamental error in the admission of Sergeant Schafer's Polar Bear Analogy. Accordingly, we affirm Johnston's convictions.

[19] Affirmed.

Kirsch, J., and Crone, J., concur.