## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 09 2017, 7:15 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer L. Koethe
LaPorte, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alan Ponce-Gomez,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 9, 2017

Court of Appeals Case No.
46A05-1606-CR-1285

Appeal from the LaPorte Superior Court.
The Honorable Michael S. Bergerson, Judge.
Cause No. 46D01-1511-F2-953

**Barteau, Senior Judge**

## Statement of the Case

Alan Ponce-Gomez appeals from his convictions of two counts of Level 5 battery,[1] contending the evidence is insufficient.  We affirm.

## Facts and Procedural History

On November 10, 2015, at around 6:45 a.m., Terri Tomassi stepped outside her house where she lived with her friend, Deb, to smoke a cigarette and start up her truck.  She and Deb had plans to leave their house on 713 York St. in Michigan City to take Tomassi's sister to a medical appointment.  Once outside, Tomassi observed a Hispanic man, later identified as Ponce-Gomez, a person she had never seen before, standing beside his truck, which was parked in her driveway, talking on his cell phone.  She told him to get off of her property because she needed to leave and his vehicle was blocking her exit.

Ponce-Gomez ignored Tomassi and kept talking in Spanish to someone on his cell phone.  Tomassi persisted, instructing Ponce-Gomez to get off her property because she needed to leave.  After continuing to ignore her repeated requests to leave, Ponce-Gomez then told her, in English, to shut up.  Tomassi believed there was something strange about the man's behavior, surmising that he was possibly high on illegal drugs.  During the encounter, he focused on her property not on her.

---

[1] Ind. Code § 35-42-2-1(f)(5)(A) (2014).

[4] After going inside and discussing the situation with Deb, Tomassi decided to call the police. She went outside again, holding up her phone and saying "policia" multiple times to let Ponce-Gomez know what she was doing. Tr. p. 58. Undeterred, Ponce-Gomez remained standing by his vehicle in her driveway. Against the 911 operator's advice, Tomassi went to the rear of Ponce-Gomez's green Ford Escalade, described the vehicle to her, and provided the license plate number.

[5] As Tomassi was talking to the operator, Ponce-Gomez got into his vehicle and started backing it up toward her. He then stopped and exited his vehicle on the passenger's side. A school bus had approached behind the two. The bus driver could not get around Tomassi or Ponce-Gomez. Ponce-Gomez stopped talking on his cell phone, looked toward the school bus, got into his vehicle and left.

[6] Tomassi went into her house thinking that the incident was over. She then called her sister to let her know that they were going to have to miss her medical appointment. The operator had told Tomassi that police were on the way to the scene and that she should remain there until officers arrived.

[7] While she was waiting inside her kitchen for law enforcement, Tomassi observed Ponce-Gomez's vehicle. She went outside to investigate, but did not see him. Deb came outside to let her know that Ponce-Gomez was inside their shed and that she had noticed the lock to the shed was broken.

[8] Shortly thereafter, Officers Bruce Krause and Larry Young, Jr., of the Michigan City Police Department arrived in uniform at the scene. Tomassi explained to

the officers what had happened and told them that she did not know Ponce-Gomez, she did not give him permission to be in her shed, and she wanted him removed from her property.

[9] Officer Krause proceeded to the storage shed where he saw Ponce-Gomez pushing a lawnmower out of the shed while holding a gas can. Officer Krause then asked Ponce-Gomez what he was doing and requested to see identification. Ponce-Gomez mumbled something in Spanish. After several requests for identification, each without a response, Officer Krause motioned for him to exit the shed. Ponce-Gomez complied, but told the officer that he had "No. I.D.". *Id.* at 138. Officer Krause then asked him to put his hands on the fence, and placed his hand on Ponce-Gomez's shoulder to motion him toward the fence. The officer did so, given the seeming communication issues between the two.

[10] Ponce-Gomez then grabbed Officer Krause's arm and wrist, resulting in a struggle. Ponce-Gomez retreated into the shed pulling Officer Krause with him. Officer Young ended up inside the shed as well. Once there, Ponce-Gomez told the officers in English, "You don't want to do this." *Id.* at 106.

[11] He continued to struggle with both officers by grabbing, pushing, pulling, and tugging them. He used his body weight to force them into objects, throw them around the shed, and cause them to fall to the ground. He lowered his center of gravity, pushing himself against both officers and using his shoulders to do so.

He grabbed Officer Young's vest, pulling down on it, grabbed his wrist and hands, and forced the officer to the ground.

[12] Although the officers repeatedly asked Ponce-Gomez to put his hands behind his back and to stop resisting arrest, he never complied. According to the officers, Ponce-Gomez physically fought with the officers for around ten minutes before they were able to handcuff him, after tasing him multiple times and other officers arrived to offer assistance.

[13] As a result of the altercation, Officer Young suffered a ripped pectoral muscle and aggravated a prior neck injury, causing him extreme pain. Officer Krause suffered cuts, bruises, and bleeding. The officers arrested Ponce-Gomez for resisting arrest.

[14] The State charged Ponce-Gomez with one count of Level 2 felony burglary resulting in serious bodily injury, one count of Level 3 felony burglary resulting in serious bodily injury, and three counts of Level 5 felony battery against a public safety officer.[2] Ponce-Gomez appeals, challenging his convictions of Level 5 felony battery against Officers Krause and Young.

---

[2] The jury found Ponce-Gomez not guilty of the injuries sustained by the third officer.

# Discussion and Decision

[15] Ponce-Gomez contends that the evidence is insufficient to sustain his convictions because the officers were injured while he resisted law enforcement, a crime for which he was arrested, but was not charged or convicted.

[16] Although Ponce-Gomez was arrested for resisting arrest, he was charged with and convicted of two counts of battery against a law enforcement officer as a Level 5 felony. "The prosecutor has broad discretion in determining what crimes to prosecute and what penalties to seek." *Boss v. State*, 702 N.E.2d 782 (Ind. Ct. App. 1998). Here, the State elected to proceed with the battery charges. Therefore, we will review Ponce-Gomez's convictions for battery against a law enforcement officer for the sufficiency of the evidence.

[17] In order to convict Ponce-Gomez of battery against Officers Krause and Young, the State was required to establish beyond a reasonable doubt that he knowingly or intentionally touched, in a rude, insolent, or angry manner, a public safety official, while the official was engaged in the official's official duties. Ind. Code § 35-42-2-1(f)(5)(A).

[18] Ponce-Gomez argues that there is insufficient evidence that he knowingly or intentionally battered the officers. When we review a claim challenging the sufficiency of the evidence we neither reweigh the evidence nor assess the credibility of the witnesses. *Treadway v. State*, 924 N.E.2d 621, 639 (Ind. 2010). Instead, we consider only the evidence and reasonable inferences drawn therefrom that support the verdict. *Id.* We will affirm the conviction if there is

probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

[19] There is no dispute that the officers were acting in their official capacity as officers of the Michigan City Police Department, responding to Tomassi's call for assistance. Further, there is no dispute that the officers suffered injuries from the early morning incident with Ponce-Gomez. Nonetheless, he argues that there is insufficient evidence to support his convictions.

[20] The issue here is whether Ponce-Gomez knowingly or intentionally committed the offenses. "Intent, being a mental state, can only be established by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn from them." *Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003), *trans. denied*. Further, "a person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a) (1977). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b) (1977).

[21] The record reflects that Ponce-Gomez initiated the struggle with Officer Krause when he grabbed the officer's wrist and forearm and pulled him back into the shed. In addition to that evidence, Ponce-Gomez stated to the officers, "You don't want to do this." Tr. p. 106. He then continued the skirmish by grabbing and pushing, using his body weight to force the officers into objects, and throwing the officers around the shed. He used his shoulders to force himself

against the officers, causing both officers to fall to the ground, and he wrestled with them. This evidence is sufficient to support the convictions.

## Conclusion

[22] Based on the foregoing, we affirm the trial court's decision.

[23] Affirmed.

Bradford, J., and Altice, J., concur.