**Franklin D. TURNER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A04–0704–CR–210.

Court of Appeals of Indiana.

Dec. 18, 2007.

Transfer Denied Jan. 24, 2008.

---

Harold E. Amstutz, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

This case is before us again following a remand to the trial court after we determined that appellant-defendant Franklin D. Turner should have been permitted to withdraw his guilty plea. Following remand, Turner was tried and convicted of Dealing in Cocaine,[1] a class A felony, Pos-

---

1. Ind.Code § 35–48–4–1.

session of Cocaine,[2] a class A felony, Possession of Marijuana,[3] a class A misdemeanor, Possession of Paraphernalia,[4] a class A misdemeanor, Maintaining a Common Nuisance,[5] a class D felony, and Possession of a Schedule IV Controlled Substance,[6] a class C felony.

In this appeal, Turner argues that his convictions must be reversed because: (1) the trial court failed to follow this court's instructions on remand in conducting a suppression hearing; (2) the police officers improperly searched Turner's trash; (3) cocaine was improperly admitted into evidence at trial; (4) the evidence was insufficient to support the conviction for dealing in cocaine;[7] and (5) he was improperly sentenced. Concluding that Turner's trash was properly seized in accordance with the standard announced by our Supreme Court in *Litchfield v. State*, 824 N.E.2d 356 (Ind.2005), and finding no other error, we affirm the judgment of the trial court.

### FACTS

The facts, as reported in Turner's prior appeal, are as follows:

> On August 21, 2003, a police officer in Tippecanoe County filed an affidavit for a search warrant, in which he described possible drug activity at 676 Harrison Circle in Dayton. The officer stated that the Dayton Town Marshall, ("Town Marshall"), had contacted him and advised him that the Town Marshall had received some complaints that there might be drug dealing at that residence. Based on that information, the officer and a detective with the Lafayette Police

Department went to the residence and noticed that trash bags had been left near the curb for pickup. The officers retrieved four white trash bags, examined their contents, and discovered several marijuana cigarettes and stems that appeared to be from marijuana plants.

> One week later, the officers returned and found more trash bags at the curb. Once again, they examined the contents of the bags and found more stems from marijuana plants. Based on what they had discovered in the trash bags, the officers sought a search warrant for the residence. The trial court granted the warrant and officers from the Lafayette Police Department executed it. Once inside the residence, they discovered Turner. Turner acknowledged that he lived there and stated that "there was no more marijuana as it had all been used." Appellant's App. at 12. In the garage, the officers discovered cocaine.

*Turner v. State*, 843 N.E.2d 937, 939 (Ind. Ct.App.2006).

Turner was subsequently arrested and charged with the above offenses. On August 9, 2004, Turner pleaded guilty to class A felony dealing in cocaine in exchange for a dismissal of the remaining charges. Before Turner was sentenced, our Supreme Court issued its opinion in *Litchfield* on March 24, 2005, holding that police officers must have reasonable suspicion of criminal activity before they can seize and search an individual's trash.

In response to *Litchfield*, Turner filed a motion to withdraw his guilty plea so that he could challenge the legality of the trash

---

**2.** I.C. § 35–48–4–6.

**3.** I.C. § 35–48–4–11.

**4.** I.C. § 35–48–4–8.3(a).

**5.** I.C. § 35–48–4–13.

**6.** I.C. § 35–48–4–7.

**7.** Turner does not challenge the sufficiency of the evidence with regard to his other convictions.

search. The trial court denied Turner's motion and subsequently sentenced Turner to twenty-five years of incarceration with five years suspended.

Turner appealed, and this court determined, among other things, that he should have been permitted to withdraw his guilty plea

[b]ecause [Turner] has demonstrated that withdrawal of his plea is necessary to correct a manifest injustice, namely, that he should have a fair opportunity to vindicate his Article I, Section 11 constitutional right against unreasonable search and seizure as enunciated in *Litchfield.*

*Id.* at 944.[8] This court instructed the trial court on remand to conduct

a full hearing on the merits of Turner's motion to suppress. On remand, the question presented is whether the affidavit in support of the search warrant demonstrated that before the officers searched Turner's trash, they had an "articulable individualized suspicion" that Turner was or had engaged in illegal activity.

*Id.* at 945. We further cautioned "that the [trial] court may consider only the evidence presented when the warrant was issued and may not rely on post hac justifications for the affidavit." *Id.*

Following this court's opinion, Turner argued to the trial court that these instructions precluded the court from hearing any evidence on the suppression motion and restricted the court to an examination of the four corners of the probable cause affidavit to determine whether reasonable suspicion for the search existed. The trial court rejected that argument, observing that the State could not have anticipated

the need to include any pre-trash search information in the affidavit in light of the current state of the law.

On January 3, 2007, the trial court held a hearing on Turner's motion to suppress. The State presented evidence from Officer Jeffrey Dunscomb, the Dayton town marshall, as to what he heard and observed up to the time that he passed the information on to the Drug Task Force officers. The trial court denied Turner's motion to suppress, finding that the police officers had reasonable suspicion to conduct the trash search. The trial court also determined that this determination was not the result of a "post hoc justification" because it was based only on the information that was actually known to the officers at the time the warrant was sought. Appellant's App. p. 131–38.

Prior to trial, the State received permission to preserve the testimony of forensic chemist Kimberly Ivanyo through a videotaped deposition because she would be unavailable at trial. Ivanyo testified in her deposition about the weight of the cocaine she had tested. Although the State had not first elicited any information from Ivanyo about the calibration of the scale that she used to weigh the cocaine, Turner made no objection.

When the deposition was played for the jury, Turner objected to Ivanyo's testimony regarding the weight of the substances. Turner argued that the evidence was inadmissible because it was the State's burden to show that the scale had been properly calibrated. The trial court overruled the objection and allowed Ivanyo's testimony regarding the weight of the cocaine that had been seized. At the conclusion of the trial, Turner moved for his class A felony

---

**8.** The author of this opinion dissented on the grounds that the new standard announced in *Litchfield* should not have applied in these circumstances. *Id.* at 946, Baker, J., dissenting.

convictions to be reduced to class B felonies based on the lack of evidence regarding the accuracy of the scale that Ivanyo had used. The trial court denied that motion, finding that Turner had not objected at the appropriate time.

Turner was found guilty on all six counts. At sentencing, the trial court merged the cocaine possession conviction into the cocaine dealing conviction on double jeopardy grounds and did not enter judgment of conviction on the possession count. Turner was sentenced to twenty years for dealing in cocaine as a class A felony, and the remaining sentences that were imposed were ordered to run concurrently with that sentence. Turner now appeals.

## DISCUSSION AND DECISION

### I. Instructions on Remand

Turner first claims that his convictions must be set aside because the trial court failed to follow this court's instructions on remand with regard to the suppression hearing. Specifically, Turner contends that the trial court erred because it considered evidence beyond that which was set forth in the probable cause affidavit in support of the search warrant for his residence when determining whether the police officers had reasonable suspicion to search his trash.

Notwithstanding Turner's claim, this court's order on remand simply stated that the trial court could not consider "post hoc justifications" for the affidavit. *Turner*, 843 N.E.2d at 945. Not surprisingly, the probable cause affidavit in support of the search warrant contained virtually no information as to why the police decided to search Turner's trash because such information was irrelevant under the law that applied before the *Litchfield* standard was announced. Indeed, at the time of the trash pull, the police officers were not required to satisfy the reasonable suspicion standard to justify the trash search. However, it does not necessarily follow that the State lacked a reasonable suspicion to pull Turner's trash when the search warrant was sought.

It is apparent that the subsequent hearing on Turner's motion to suppress was the first time that the State was placed on notice that it was required to offer evidence in support of the reasonable suspicion standard. In our view, the presentation of that evidence does not rise to a level of "post hoc justification" for the search. In other words, there is no showing that the State was relying on information gained after the warrant was obtained to justify the issuance of the search warrant. Rather, the evidence presented at the suppression hearing demonstrated that the State was relying only on information that was known to the police officers when the search warrant was sought. In fact, no evidence had been presented to the trial court in *Litchfield* on the issue of reasonable suspicion because that requirement had not previously existed. 824 N.E.2d at 364. Moreover, nothing in *Litchfield* suggested that the trial court was limited to the evidence that had already been placed before it. The trial court in *Litchfield* held another evidentiary hearing as it was instructed to do on remand, and it considered evidence regarding the information that was known to the police at the time they decided to pull the defendant's trash. *State v. Litchfield*, 849 N.E.2d 170, 172–74 (Ind.Ct.App.2006), trans. *denied.* This is precisely what occurred here, and we therefore reject Turner's claim that the trial court improperly heard additional evidence at the subsequent suppression hearing.

### II. Search of the Trash

In a related argument, Turner contends that his convictions must be vacated be-

cause the search of the trash violated his rights to be free from unreasonable search and seizure under Article I, Section 11 of the Indiana Constitution. More specifically, Turner maintains that the evidence should not have been admitted into evidence because the State failed to establish that the police officers had reasonable suspicion to search the trash.

 In resolving this issue, we initially observe that a trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind.Ct.App.2003). We will reverse a trial court's ruling on the admissibility of evidence only when it constitutes an abuse of discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

 As discussed above, our Supreme Court in *Litchfield* created a new restriction on warrantless "trash pulls" to obtain evidence for a search warrant. 824 N.E.2d at 357. In essence, it was established that it is unreasonable for police to search indiscriminately through people's trash:

A search of trash recovered from the place where it is left for collection is permissible under the Indiana Constitution, but only if the investigating officials have an articulable basis justifying reasonable suspicion that the subjects of the search have engaged in violations of law that might reasonably lead to evidence in the trash.

*Id.*

 In this case, the evidence established that during the first week of August 2003, Officer Dunscomb's attention was drawn to Turner's residence because of the numerous individuals who came and went at all hours. Tr. p. 14–15. On one occa-sion, Officer Dunscomb noticed a vehicle with a broken rear window parked in front of Turner's house. *Id.* at 15–16, 204. As Officer Dunscomb was walking up the driveway to alert the owner of the damage, he noticed that the window on the front door of the residence was covered with a wet towel and all of the front windows of the house were covered with blankets. *Id.* at 17–18, 20, 204–07. Officer Dunscomb also observed that there was an open box of moth balls outside the door. Based on his years of experience with the Drug Task Force, Officer Dunscomb recognized these as possible signs of an attempt to mask drug activity. *Id.* at 19, 206. When Officer Dunscomb knocked on the door, he heard activity inside, but no one answered. *Id.* at 19, 208. Shortly thereafter, Shanei-ka Worley—the individual who lived with Turner at the house—opened the garage door, came outside, and asked Officer Dunscomb if he needed anything. *Id.* at 20, 208–09. Officer Dunscombe informed Worley about the vehicle, and she indicated that she was aware of the damage. *Id.* at 20, 208.

Because Officer Dunscomb believed that drug trafficking was occurring at the residence, he continued to watch the house. *Id.* at 21. When on duty during the second week of August, Officer Dunscomb drove past the house several times and again observed heavy foot and vehicular traffic coming and going at all hours. Officer Dunscomb recorded the license plate numbers of several vehicles and found that one of the cars was from LaPorte County and two of them were from Marion County. *Id.* at 24–25. Officer Dunscomb also learned that one of the vehicles was registered to an individual who had a prior cocaine history. *Id.* at 24–25.

On one occasion, two people who lived in Turner's neighborhood approached Officer Dunscomb and expressed concern about

the number of individuals who came and went from the residence at all hours. Thereafter, Officer Dunscomb contacted the individuals whom he knew on the Drug Task Force and relayed the information and suspicions that he had about the residence. *Id.* at 30, 211. Based on that information, Drug Task Force officers conducted the two trash pulls. As noted above, marijuana stems and related items were recovered from the trash on both occasions. *Id.* at 30, 277–78. Based on this information, the officers used the evidence seized in the trash pulls to obtain a search warrant for the residence. *Id.* at 283–84.

■ While Turner claims that the police officers' conduct in pulling his trash failed to satisfy the reasonable suspicion standard announced in *Litchfield,* we note that while more than an inchoate and unparticularized hunch was required, the rule announced in *Litchfield* contains a less demanding standard than probable cause. Indeed, the reasonable suspicion standard requires a showing "considerably less" than proof of wrongdoing by a preponderance of the evidence. *Cardwell v. State,* 666 N.E.2d 420, 422 (Ind.Ct.App.1996).

Given Officer Dunscomb's observations, we cannot agree with Turner that the decision to search the trash amounted to nothing more than an indiscriminate fishing expedition. Also, while the circumstances known to Officer Dunscomb may have had innocent explanations, there is no requirement for the police to eliminate or disprove all potential innocent explanations of a defendant before acting. Under the rule

announced in *Litchfield,* what matters is whether the totality of the circumstances reasonably could create a suspicion of criminal activity based on common sense and the police officer's training and experience. In our view, the standard was satisfied in this case. As a result, we conclude that the evidence seized pursuant to the search warrant was properly admitted at trial.[9]

### III. Admissibility of Evidence

Turner next argues that the trial court improperly admitted evidence regarding the weight of the cocaine seized from his residence. Specifically, Turner claims that the State failed to introduce any evidence that the scales used to weigh the drug had been properly calibrated.

■ As noted above, the decision to admit or exclude evidence lies within the trial court's sound discretion and is afforded great deference on appeal. *Bacher v. State,* 686 N.E.2d 791, 793 (Ind.1997). We will not reverse that decision absent a showing of a manifest abuse of discretion resulting in the denial of a fair trial. *Washington,* 784 N.E.2d at 587. We also note that it is the responsibility of the party opposing the admission of relevant evidence to show why it should be excluded. *Guadian v. State,* 743 N.E.2d 1251, 1255 (Ind.Ct.App.2001). Moreover, a party's failure to present a contemporaneous objection at trial precludes appellate review of the claim. *Booher v. State,* 773 N.E.2d 814, 817 (Ind.2002). Finally, a defendant is foreclosed from claiming error when the

---

9. As an aside, we note that on several occasions, this court has found that pre-*Litchfield* trash seizures do not mandate suppression of post-search warrant evidence as long as the trash search was conducted in accordance with the prevailing law at the time. *See, e.g., Richardson v. State,* 848 N.E.2d 1097, 1105 (Ind.Ct.App.2006) (recognizing that in light of the case law that existed at the time of the search of the defendant's trash, the search in question was not unreasonable), *trans. denied; State v. Harmon,* 846 N.E.2d 1056, 1059–60 (Ind.Ct.App.2006) (same), *trans. denied; Edwards v. State,* 832 N.E.2d 1072, 1076–77 (Ind.Ct.App.2005) (same).

alleged error is invited. *Blixt v. State,* 872 N.E.2d 149, 154 (Ind. Ct.App.2007).

As discussed above, the trial court granted the State's request to take Ivanyo's videotaped deposition because of her unavailability to testify at trial. During the deposition that was played for the jury, Ivanyo testified that the two baggies recovered from Turner's residence contained 26.03 and 79.25 grams of cocaine, respectively. State's Ex. 25. Prior to eliciting the testimony, the State did not question Ivanyo about the calibration of the scale that she used to weigh the drugs, and Turner did not make any objection about the calibration of the scale. However, at trial, Turner objected to the admission of Ivanyo's testimony regarding the weight of the cocaine, claiming that the State had failed to meet its burden that the scale had been properly calibrated. Tr. p. 487–93. The trial court overruled the objection and, following the presentation of the evidence, Turner filed a motion to have the class A felony conviction for dealing in cocaine reduced to a class B felony conviction because the State had failed to prove that the scale had been properly calibrated. The trial court denied the motion, again concluding that Turner had not objected in a timely manner. *Id.* at 598–606.

■ We acknowledge that the State bears the burden to show that the scale used to measure the weight of the cocaine was properly calibrated. *Robinson v. State,* 634 N.E.2d 1367, 1374 (Ind.Ct.App. 1994). However, such is a foundational requirement and not an element of the controlled substance offense itself. *Guadian v. State,* 743 N.E.2d 1251, 1255 (Ind.Ct. App.2001). When the foundation for the admission of evidence is at issue, this court has determined that before the prosecution has any responsibility to establish the foundation, the defense must object that the prosecution has not laid the proper foundation. *Id.* at 1254. Indeed, a party may not sit idly by and fail to object to the lack of a proper foundation and subsequently take advantage of that error when a timely objection could have permitted the proper foundation to be laid. *Id.*

As noted above, Turner did not object during the deposition when Ivanyo was testifying as to the weight of the substances that she tested. As a result, the trial court properly admitted the evidence even though the State had not elicited testimony about the calibration of the scale. *See Espinoza v. State,* 859 N.E.2d 375, 383–85 (Ind.Ct.App.2006).

Notwithstanding the above, Turner maintains that his circumstances should be treated differently because the prosecutor and defense counsel preliminarily agreed that objections would be heard at trial rather than during the deposition. However, there was no agreement that the parties would forego the obligation to *raise* appropriate objections during the deposition. To the contrary, it is apparent that the parties agreed that the trial court would resolve any objections made at Ivanyo's deposition when the trial commenced. Moreover, Turner *did* raise other objections to Ivanyo's testimony during the deposition. State's Ex. 25. Because Turner did not make a timely objection to the accuracy of the scale that was used to weigh the cocaine, his claim fails.

■ Finally, even if it could be assumed solely for argument's sake that the weight of the cocaine was improperly admitted into evidence, the error is harmless and reversal is not warranted. This court has determined that an error is harmless if the probable impact of the evidence upon the jury is sufficiently minor so as not to affect a party's substantial rights. *Edmond v. State,* 790 N.E.2d 141, 144–45 (Ind.Ct.App.2003).

In this case, the weight of the cocaine that was seized was important because the State was required to prove that Turner had over three grams of cocaine in order for the offense to constitute a class A felony. I.C. § 35–48–4–1. In other words, if the amount was less than three grams, the offense would have been only a class B felony. *Id.* Considering the sheer amount of cocaine that the police officers seized in this case, it is apparent that even if the scale had not been properly calibrated, there is virtually no possibility that the cocaine seized weighed less than three grams. Ivanyo testified that the total amount of cocaine was over 105 grams, which is over thirty times the amount necessary to enhance the offense to a class A felony.

The record demonstrates that Ivanyo is a trained and experienced chemist, has been employed by the State Police laboratory for six years, and has analyzed almost 12,000 drug cases during that time. State's Ex. 25. Given these circumstances, it follows that if the amount of cocaine that Ivanyo was handling was less than three grams, she would have questioned a result indicating, for example, that the substance exceeded seventy-nine grams. In other words, Ivanyo's six years of experience and her handling of over 10,000 drug cases would have revealed to her that such a result could not possibly have been accurate. In our view, there is no reasonable possibility that the scale was so inaccurate that it measured less than three grams of cocaine as weighing over 105 grams. In the absence of such an extraordinary inaccuracy, Turner cannot have been prejudiced by the admission of the weight evidence because he was equally guilty of a class A felony whether the true weight was ten grams or 100 grams. For these reasons, Turner's claim that the cocaine was improperly admitted into evidence fails.

*IV. Sufficiency of the Evidence*

Turner contends that the evidence was insufficient to support his conviction for cocaine dealing. Specifically, Turner maintains that his conviction must be reversed because the State failed to present any evidence that he intended to deliver the drug.

In resolving this issue, we initially observe that our standard of review for sufficiency of the evidence claims is well settled. In reviewing such claims, we will not reweigh the evidence or assess the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind.2005). We will consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Id.* The conviction will be affirmed if there is substantial evidence of probative value to support the conviction of the trier of fact. *Id.*

To convict Turner of dealing in cocaine as a class A felony, the State was required to prove that he knowingly or intentionally possessed cocaine with the intent to deliver the substance. I.C. § 35–48–4–1. The element of intent can be inferred from examining the surrounding circumstances and the reasonable inferences to be drawn therefrom. *Thompson v. State*, 702 N.E.2d 1129, 1132 (Ind.Ct. App.1998). Evidence of the illegal possession of a relatively large quantity of drugs is sufficient to sustain a conviction for possession with intent to deliver. *O'Neal v. State*, 716 N.E.2d 82, 90 (Ind.Ct.App.1999). Indeed, the greater the quantity of drugs possessed, the stronger the inference that the person intended to deal them. *Davis v. State*, 791 N.E.2d 266, 270 (Ind.Ct.App. 2003).

While Turner maintains that there was no direct or circumstantial evidence that he intended to deliver or deal the

cocaine to others, the evidence established that Turner and Worley lived at a residence at which the police observed a substantial amount of foot and vehicular traffic coming and going at all hours of the day. Tr. p. 14–15, 210, 244–45. Items bearing Turner's name were found in the same trash bags containing marijuana products. *Id.* at 283–85. The police recovered over 105 grams of cocaine hidden inside a vacuum cleaner in the garage, which functioned as a "family room" with a couch, coffee table, and chairs. *Id.* at 289–92.

In the master bedroom, the police found a number of items belonging to Turner including his identification, social security card, and wallet. The police also recovered .01 gram of rock cocaine in a sock drawer, a zippered pouch on the headboard of the bed containing $2358 in cash, a loaded .40–caliber handgun under the mattress, and two Clonazepam pills, a controlled substance. The evidence also established that Turner attempted to flee when the police arrived at the residence. Lafayette Police Officer Brian Brown testified that the amount of cocaine recovered was more consistent with dealing than with personal use and that the presence of the scale and the large sum of cash recovered from the residence was also more consistent with dealing than with personal use. *Id.* at 403–04.

In considering the above, it is apparent that the items connected to the drug activity were found throughout the house and in close proximity to personal items that belonged to Turner. Thus, the evidence established that Turner had the intent and capability to maintain dominion and control over the cocaine. Even more compelling, the evidence of Turner's intent to deliver the cocaine was shown through the sheer amount of cocaine that was found, which was significantly more than what one would associate with personal use. *See Beverly v. State,* 543 N.E.2d 1111, 1115 (Ind.1989) (holding that evidence of the illegal possession of a relatively large quantity of drugs is sufficient to sustain a conviction for possession with the intent to deliver). The more narcotics a person possesses, the stronger the inference that he intended to deliver the narcotics and not personally consume them. *Love v. State,* 741 N.E.2d 789, 792 (Ind.Ct.App.2001).

Turner's intent is further buttressed by the presence of the scale, the large amount of cash recovered from the residence, and the heavy traffic that came and went from the house at all hours. In sum, we conclude that the evidence was sufficient to support Turner's conviction for dealing in cocaine as a class A felony.

### V. Sentencing

■ Finally, Turner argues that his sentence must be set aside. Specifically, Turner contends that the trial court abused its discretion in not suspending all or part of his sentence for dealing in cocaine, a class A felony.[10] Moreover, Turner claims that the sentence was inappropriate when examining the nature of the offense and his character.

■ In resolving this issue, we initially observe that a decision not to suspend a sentence is reviewable only for an abuse of discretion. *Ables v. State,* 848 N.E.2d 293, 296 (Ind.Ct.App.2006). The suspension of a sentence is a matter of grace and a judicial favor to a defendant. In other words, a suspended sentence is not something to which a defendant has a right or an entitlement. *Childers v. State,* 656 N.E.2d 514, 516 (Ind.Ct.App.1995).

**10.** Turner does not challenge the concurrent sentences that were imposed on the remaining offenses.

In this case, the trial court imposed the minimum sentence provided by law.[11] At the sentencing hearing, the trial court stated that Turner's sentence was suspendible. Tr. p. 623–24. However, we note that Indiana Code section 35–50–2–2(b)(4)(O) provides that a minimum sentence may not be suspended when the defendant commits dealing in cocaine and it is determined that the defendant possessed a firearm at the time of the offense. Because the evidence established that Turner possessed a handgun[12] when he was arrested and charged with dealing in cocaine, the trial court erroneously stated that Turner's sentence was suspendible. Thus, Turner cannot succeed on his claim that his sentence must be set aside on this basis. Finally, we note that because the trial court could not have suspended any portion of the minimum sentence that was imposed, Turner's contention that his sentence was inappropriate necessarily fails.[13]

The judgment of the trial court is affirmed.

DARDEN, J., and BRADFORD, J., concur.

**11.** When Turner committed the offenses in 2003, Indiana Code section 35–50–2–4 provided that "A person who commits a Class A felony shall be imprisoned for a fixed term of thirty (30) years, with not more than twenty (20) years added for aggravating circumstances or not more than ten (10) years subtracted for mitigation circumstances."

**12.** Turner told the officers where the gun was located when they were searching the residence. Tr. p. 255, 257–58, 286–87, 301, 311, 339, 389.

**13.** As an aside, we note that the jury trial protection that was upheld by the United States Supreme Court in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), only applies to facts that enhance a defendant's sentence above the statutory presumptive. In other words, the protection announced in *Blakely* has no applicability to facts that trigger mandatory minimum sentences. *See Harris v. United States*, 536 U.S. 545, 558, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (holding that facts triggering mandatory minimum sentences do not violate the Sixth Amendment or the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), because they do not increase the statutory maximum sentence available to the court).