## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 22 2016, 8:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Matthew Elliot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jonas Jackson,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

December 22, 2016

Court of Appeals Case No.
33A05-1606-CR-1501

Appeal from the Henry Circuit Court

The Honorable Mary G. Willis, Judge

Trial Court Cause No.
33C01-1506-F4-6

**Brown, Judge.**

[1] Jonas Jackson appeals his conviction for dealing in a narcotic drug as a level 5 felony. Jackson raises one issue which we revise and restate as whether the evidence is sufficient to sustain his conviction for dealing in a narcotic drug as a level 5 felony. We affirm.

## Facts and Procedural History

[2] On June 3, 2015, the Henry County Drug Task Force and New Castle Police executed a search warrant at a house in New Castle, Indiana, where alleged methamphetamine sales were taking place. Police detained two people in the downstairs bathroom and two people, including Jackson, in the upstairs attic which had been turned into a bedroom. Jackson had been staying in the upstairs bedroom for a couple of days at the time of the search.

[3] On the floor underneath or directly next to Jackson, police discovered several small baggies, one of which contained 2.78 grams of heroin, another of which contained 0.23 grams of methamphetamine, and another which contained six tablets: one white tablet containing clonazepam, four blue tablets containing Xanax, and one green tablet containing oxycodone. Police discovered a cell phone belonging to Jackson on the bed, and a plastic bag containing empty small plastic baggies, a backpack containing several boxes of syringes and additional empty baggies, and two digital scales near the bed. Police also found cash totaling $1,196 in Jackson's pocket. The cash was in a wad in his pocket and consisted of bills in small denominations.

[4]     On June 4, 2015, the State charged Jackson with: Count I, dealing in the controlled substance heroin as a level 4 felony; Count II, dealing in methamphetamine as a level 5 felony; Count III, dealing in the narcotic drug oxycodone as a level 5 felony; Count IV, possession of the controlled substance clonazepam as a class A misdemeanor; and Count 5, possession of paraphernalia as a class A misdemeanor.  The State later dismissed the charge of possession of paraphernalia.  At Jackson's jury trial, the trial court admitted a number of messages which were recovered from his cell phone.  State's Exhibit 10 contains the following messages between Jackson and a person named Charlee Mariah:

> [Charlee Mariah:]  i understand i heard you picked up again.  im sorry jonas.  now im worried.  i just want you to do good.
>
> [Jackson:]  I didn't pick up like that I started sailing again cause I have been broke
>
> [Charlee Mariah:]  oh i thought you were doin the slow[1] again
>
> [Jackson:]  He'll no I was dealing speed to make money
>
> [Charlee Mariah:]  I see, well that's not good either. . . .

State's Exhibit 10.

---

[1] The investigator testified that the term "slow" means "a pain pill or heroin or something that's going to slow, slow you down rather than speed you up like a stimulant."  Transcript at 80.

State's Exhibit 11 contains the following text messages between Jackson and his girlfriend:

> [Jackson's Girlfriend:] Hey baby how much 4 the subs the chic i work w is dying n wants sum.
>
> [Jackson:] Honey u Should probably Now how much i love u and how u make me feel like little kid when. Im around, u. You have to know how much u make Me want to b a better man have a good day at work and tell her 25. I usually charge 30 love u tell her I have boi to 20.[2] A ticket
>
> [Jackson's Girlfriend:] 20 a bag?
>
> [Jackson:] yeah
>
> [Jackson's Girlfriend:] I love u sleepy head.

State's Exhibit 11.

State's Exhibit 12 contains the following messages between Jackson and a person named Jeremiah:

> [Jeremiah:] Cant dont have a phone
>
> [Jackson:] Can um move sum n for me[3]
>
> [Jeremiah:] Yes inow some people
>
> [Jeremiah:] where u at

---

[2] The investigator testified that the term "boi" is "a street level name for heroin." Transcript at 84.

[3] When asked about this language, the investigator testified that "[h]e's wanting to know if he can move some drugs for him." Transcript at 86.

[Jackson:] K town

State's Exhibit 12.

[7] State's Exhibit 13 contains the following messages between Jackson and a person named Josh:

[Josh:] I was wondering if your n Fort Wayne or if we could hook up today.

[Jackson:] I'm in fort Wayne but for what I might drive if it's worth it

[Josh:] Whole...[4]

[Jackson:] I only have a half of the pink[5] and its cost more but way better and that's hard to do

[Josh:] Damage?

[Josh:] Lol

[Jackson:] It's 8[6] bro sorry I paid so much for this but u will see the difference but if u need me to spot u some of the cash I can but I will need it tomm or Sun sorry

[Josh:] Done

[Jackson:] When do u want it can I wait till day light or do u want it tonight

---

[4] The investigator testified that, "[d]uring a trade, a whole means one gram." Transcript at 91.

[5] The investigator testified that "when he says pink, it's pink methamphetamine, sometimes stronger than ice, the normal ice we see." Transcript at 91.

[6] The investigator testified that "the 8 is Eighty Dollars ($80)." Transcript at 91.

[Josh:] I'm out but I don't care. Daylights good . . . .

State's Exhibit 13.

[8] Ryan Black, another occupant of the house, testified that he told police that he had seen all the cash and knew Jackson was dealing, and that the upstairs bedroom was a place where people would use controlled substances and drugs on a regular basis. The jury found Jackson guilty on all counts as charged. The court sentenced him to ten years on Count I, five years each on Counts II and III, and one year on Count IV, all to be served concurrently for an aggregate term of ten years.

## Discussion

[9] The issue is whether the evidence is sufficient to sustain Jackson's conviction for dealing in a narcotic drug as a level 5 felony under Count III.[7] When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995), *reh'g denied*. Rather, we look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

---

[7] Jackson does not challenge his convictions for dealing in heroin as a level 4 felony, dealing in methamphetamine as a level 5 felony, or possession of schedule IV controlled substance clonazepam as a class A misdemeanor.

Jackson asserts that the State failed to prove beyond a reasonable doubt that he intended to deal when he was found in possession of a single pill of oxycodone. He argues that the State "failed to present any testimony that 'subs' referred to oxycodone" and that "it is reasonable to infer, given the conversation, that Jackson's girlfriend was referring to suboxone, and not oxycodone." Appellant's Brief at 9. He argues he was not found in possession of suboxone at the time of his arrest.

The State points out that Jackson does not dispute that the State demonstrated that he possessed oxycodone and that the cell phone conversations presented by the State were circumstantial evidence indicating Jackson intended to deal oxycodone. It argues that "it is reasonable to infer 'subs' referred to a substitute for heroin," that "oxycodone could easily be considered a 'substitute' drug for heroin," and that, "[g]iven that [Jackson] possessed oxycodone, but not suboxone, this would be the more reasonable inference." Appellee's Brief at 11-12. The State also argues that it is not necessary for the State to prove exactly what Jackson meant in his text message to establish his intent, the jury was permitted to examine the surrounding circumstances and reasonable inferences to determine intent, police found $1,196 in small bills and multiple unused small zip-lock baggies, and that Black told police he knew Jackson was dealing.

At the time of the offense, Ind. Code § 35-48-4-1 provided in part that "[a] person who . . . possesses, with intent to . . . deliver . . . a narcotic drug, pure or adulterated, classified in schedule I or II . . . commits dealing in . . . a narcotic drug, a Level 5 felony . . . ." (Subsequently amended by Pub. L. No. 44-2016, §

2 (eff. July 1, 2016)). Ind. Code § 35-48-2-6 provides that oxycodone is classified in schedule II. *See* Ind. Code § 35-48-2-6(a), (b)(1)(O). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2. The element of intent can be inferred from examining the surrounding circumstances and the reasonable inferences to be drawn therefrom. *Turner v. State*, 878 N.E.2d 286, 295 (Ind. Ct. App. 2007), *trans. denied*. In Count III, the State alleged that, on or about June 3, 2015, Jackson "did possess, with intent to deliver, oxycodone, pure or adulterated, a Narcotic Drug listed in Schedule II Ind. Code § 35-48-2-6(a)(b)(1)(O)." Appellant's Appendix at 18.

[13]  The evidence establishes that Jackson was in possession of a small zip-lock bag which contained six tablets including a tablet having the active ingredient of oxycodone. Jackson does not dispute that he was in possession of the oxycodone. The jury, in determining whether Jackson possessed the oxycodone with intent to deliver, was able to consider the surrounding circumstances and reasonable inferences drawn from the surrounding circumstances. *See Turner*, 878 N.E.2d at 295. The jury was able to consider the text messages between Jackson and his girlfriend as well as the other messages recovered from Jackson's phone. The record further reveals that Black indicated that he had told police that he had seen all the cash and knew Jackson was dealing and that the upstairs bedroom was a place where people would use controlled substances and drugs on a regular basis. In addition, the State presented testimony that police found $1,196 in small denominations in a

wad in Jackson's pocket. An officer testified that, "in narcotics purchases . . . , someone's using or selling, they're going to have short denominations of cash or currency." Transcript at 127. He explained that short denominations meant "[t]ens, twenties, fives, ones, dollar bills." *Id.* at 128. Further, the State presented evidence that Jackson was found to be in possession of numerous unused small zip-lock baggies. A police investigator testified that, in his training and experience, "subjects use these to put narcotics in and they use – they'll often have these to repackage the narcotics as they're breaking them down into smaller amounts for resale." Transcript at 60. Jackson was also discovered in possession of numerous syringes, and the investigator testified that it is extremely common for drug dealers to have buyers first use the product before they leave. Police also discovered two digital scales near the other items.

[14] While the jury could have made different inferences from the evidence, we cannot say that the inference made by the jury was unreasonable. We conclude that the State presented evidence of a probative nature from which a jury could find beyond a reasonable doubt that Jackson committed the crime of dealing in the narcotic drug oxycodone as a level 5 felony under Count III.

## *Conclusion*

[15] For the foregoing reasons, we affirm Jackson's conviction for dealing in the narcotic drug oxycodone as a level 5 felony.

[16] Affirmed.

Vaidik, C.J., and Bradford, J., concur.