## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 31 2017, 7:34 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and Cass County
Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Katherine Cooper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ronnell Roberts, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 31, 2017 <br><br> Court of Appeals Case No. <br> 09A05-1702-CR-283 <br><br> Appeal from the Cass Superior Court <br><br> The Honorable Richard Maughmer, Judge <br><br> Trial Court Cause No. <br> 09D02-1605-F2-8 |

**Crone, Judge.**

# Case Summary

A jury convicted Ronnell Roberts of level 2 felony dealing in cocaine and class A misdemeanor dealing in marijuana. Roberts now appeals, challenging the admission of certain evidence at trial as well as the sufficiency of the evidence to support his convictions. Concluding that he has failed to establish an abuse of discretion in the trial court's admission of evidence and finding the evidence sufficient to support his convictions, we affirm.

# Facts and Procedural History

The facts most favorable to the verdicts are as follows. In May 2016, Roberts and his wife Hollie rented a room in a single-family residence owned by Paula Lamb. Two weeks later, Logansport police received an anonymous complaint concerning drug activity and suspicious odors emanating from the house. Officers James Klepinger and Jason Shideler went to the house and spoke with Lamb, who invited them in and informed them that she lived there with her daughter and her daughter's fiancé and that she had rented a room to "Nello" and Hollie. Tr. at 33, 38-39, 57-58, 135, 142. Per the officers' request, Lamb escorted them to the rented room upstairs. As they approached the room, they detected the odor of marijuana. When Lamb opened the door, the odor was significantly stronger. Burnt marijuana cigarette butts were on a plate on the headboard of the bed, and Roberts and Hollie were sitting on the bed. Roberts reported that he had been renting the room for about two weeks.

[3] Police searched the room and found several personal items, including clothing, identification, a handbag, and two cell phones. They also discovered two velvet bags inside a dresser drawer. Inside the purple bag, they found nine individually knotted baggies, four of which were later found to contain an equally sized off-white rock substance, and five of which contained even smaller portions of the same substance. In the same purple bag, police found a separate baggie containing a large rock of the same substance. Subsequent testing showed the rocks to be cocaine. Also inside the purple bag were a digital scale, razor blades, and several empty baggies. Inside the green velvet bag, police discovered a plastic bag containing twenty-four individually wrapped bags of a green substance determined to be marijuana.

[4] Officers obtained a search warrant for the two phones and determined which phone was Roberts's by using contact information and a reference to the user as "Nello." Id. at 134-35, 140, 142. The phone determined to be Roberts's contained a close-up photo of Roberts as well as photos of marijuana.

[5] The State charged Roberts with level 2 felony dealing in cocaine (at least ten grams); level 4 felony cocaine possession (at least ten grams); and class A misdemeanor dealing in marijuana. The State requested permission to conduct a videotaped deposition of forensic scientist Kimberly Ivanyo, who had conducted the lab tests on the suspected illegal substances, to be used at trial. The trial court granted the State's request, and Roberts appeared in person and by counsel at the deposition. During his subsequent jury trial, Roberts objected to the admission of Ivanyo's deposition, as well as her certificate of analysis

regarding the weight and composition of the substances tested. He also objected to the admission of text messages extracted from his cell phone. The jury convicted him as charged, and the trial court vacated his conviction for level 4 felony cocaine possession. The trial court sentenced him to an aggregate thirty-one-year term.

Roberts now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – Roberts has failed to establish an abuse of discretion in the trial court's admission of the challenged evidence.

Roberts challenges the admission of certain evidence during his jury trial. We review rulings on the admission or exclusion of evidence for an abuse of discretion resulting in prejudicial error. *Williams v. State*, 43 N.E.3d 578, 581 (Ind. 2015). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or where the trial court misinterprets the law. *Id.*

Particularly, Roberts challenges the trial court's admission of certain text messages extracted from his cell phone as well as Ivanyo's deposition testimony concerning the weight of the cocaine seized from his rented room. We address each separately.

## A. Text messages

[9] Roberts objected to the admission of the extracted text messages on grounds of authenticity, relevance, and hearsay. To lay a foundation for admission, writings and recordings must be authenticated pursuant to Indiana Evidence Rule 901(a). *Hape v. State*, 903 N.E.2d 977, 990 (Ind. Ct. App. 2009), *trans. denied*. Evidence Rule 901(a) reads, "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Absolute proof of authenticity is not required, but rather only a reasonable probability that the document is what it purports to be. *Fry v. State*, 885 N.E.2d 742, 748 (Ind. Ct. App. 2008), *trans. denied*. Once a reasonable probability is shown, any inconclusiveness concerning the exhibit's connection to the events at issue goes to the exhibit's weight, not its admissibility. *Pavlovich v. State*, 6 N.E.3d 969, 976 (Ind. Ct. App. 2014), *trans. denied*.

[10] Roberts claims that the State failed to establish that he was the sender of the extracted messages. We disagree. Police recovered two cell phones from the room that Roberts rented with Hollie. Because one of the phones listed Hollie as a frequent contact, police determined that it was Roberts's phone and sought to extract information from it. They obtained a search warrant and extracted several text message conversations purportedly between Roberts and others. In one of the extracted messages, the sender referred to himself as "Nello." *See* State's Ex. 44k ("Well if this mike its nello i was wondering if you still have lab t op"). This nickname is consistent with Roberts's first name "Ronnell" as well

as with the nickname by which his landlady referenced him to police. The cell phone also contained what appeared to be a close-up "selfie" photograph of Roberts. State's Ex. 46. The trial court properly found the cell phone and text messages to be authenticated as Roberts's.

[11] Roberts also contends that the extracted text messages lacked relevance and were highly prejudicial. In general, all relevant evidence is admissible. Ind. Evidence Rule 402; *Wilson v. State*, 4 N.E.3d 670, 675 (Ind. Ct. App. 2014), *opinion on reh'g*, *trans. denied*. Indiana Evidence Rule 401 provides that evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action. The trial court has the discretion to admit even marginally relevant evidence. *Wilson*, 4 N.E.3d at 675. Notwithstanding, Indiana Evidence Rule 403 allows the trial court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice."

[12] Excerpts from the extracted text messages sent from Roberts's phone include the following:

> Sent: Hey its some decent sh*t G cause im out of state so I got distinguish myself from the rest in town so I can get the bread
>
> ….
>
> Sent: Im coming thru east chicago now and I was wondering if its good sh*t cause im coming from out of state and got to distinguish myself with better sh*t then the town

Sent: to make bread

….

Sent:  You think dude rock be having some hood sh*t

….

Sent:  Im on the highway now ill hustle and make due with whatever you hook me up with

….

Sent:  Im going back to Chicago its there today I cant keep sitting dry aint making no money and I want to still be sitting on something when I pay you back or it will defeat the purpose of ever borrowing anything to come up you know

….

Sent:  My guy aint coming back I got to take the cash to them and its mids

….

Sent:  Mothers day weekend deal before I go until I come back

State's Exs. 44a, 44f, 44h, 44i, 44j.

[13]  These excerpts from Roberts's text messages are highly probative of Roberts's intent to deal (not merely use) cocaine and marijuana.  This is especially true when the messages are considered in conjunction with the quantity of the drugs recovered, their packaging, and the presence of paraphernalia such as razor blades and a digital scale.  As for Roberts's claims of unfair prejudice, we

observe that, except as previously referenced, the messages are largely mundane, sometimes in code,[1] and sometimes speaking merely to his whereabouts. The relevancy of the text messages was not substantially outweighed by any danger of prejudice, and Roberts has failed to establish an abuse of discretion for the admission of the messages on this basis.

[14] Roberts also asserts that the text messages were inadmissible on hearsay grounds. Hearsay is a statement not made by the declarant while testifying at the trial or hearing and offered in evidence to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is generally inadmissible under Indiana Evidence Rule 802. *Harrison v. State*, 32 N.E.3d 240, 254 (Ind. Ct. App. 2015), *trans. denied*. Indiana Evidence Rule 801(d)(2)(A) provides that an opposing party's out-of-court statement offered in evidence to prove the truth of the matter asserted is not hearsay if it is offered against the opposing party and was made by the party in an individual or representative capacity. Having authenticated the cell phone and its contents as belonging to Roberts, the State properly offered the statements contained in the extracted text messages as statements of a party opponent. That said, we also note that neither Roberts's "sent" messages nor the messages in his inbox were offered to prove the truth of the matters asserted in each of the statements, i.e., not offered to establish that out-of-state drugs are "better sh*t" that would distinguish Roberts from other dealers in town. State's Ex. 44a. Instead, the mere fact that Roberts sent the

---

[1] To alleviate potential jury confusion, Officer Klepinger provided clarifying testimony.

messages was relevant to the issue of his being a drug dealer. We therefore conclude that the challenged text messages were properly admitted as non-hearsay.

### B. Ivanyo's Deposition

Roberts also submits that the trial court abused its discretion in admitting Ivanyo's deposition. Essentially, he claims that the State failed to lay a foundation as to Ivanyo's competency to testify regarding the weight of the marijuana and cocaine and the accuracy of the scale used to weigh the cocaine seized from his rented room. Having reviewed Ivanyo's deposition, we observe that the State elicited extensive testimony from Ivanyo concerning her educational and occupational credentials, i.e., a bachelor's degree in chemistry from Purdue University, fifteen years' experience as a forensic scientist with the State Police laboratory (having tested over 27,000 items), and testimony in ninety-five previous cases. Ivanyo explained the nuances of analyzing plant matter versus powder or rock substances. State's Ex. 8. The State established that Ivanyo was an experienced chemist, qualified to test the substances and testify concerning her findings.

As for the accuracy of the scale that Ivanyo used in her testing, the State made only a passing reference to calibration but elicited her explanation concerning the margin of error of her results. We addressed the issue of scale calibration in *Turner v. State*, 878 N.E.2d 286, 294 (Ind. Ct. App. 2007), *trans. denied* (2008). There, as here, the trial court granted the State's request to depose its forensic scientist on videotape due to her unavailability to testify at trial. *Id*. In *Turner*,

the State elicited no testimony from its scientist during her deposition concerning the calibration of the scale, and the defendant did not object or question her concerning the scale's calibration but later objected at trial. *Id*. In affirming the trial court's admission of the forensic scientist's deposition, the *Turner* court reasoned,

> We acknowledge that the State bears the burden to show that the scale used to measure the weight of the cocaine was properly calibrated. However, such is a foundational requirement and not an element of the controlled substance offense itself. When the foundation for the admission of evidence is at issue, this court has determined that before the prosecution has any responsibility to establish the foundation, the defense must object that the prosecution has not laid the proper foundation. Indeed, a party may not sit idly by and fail to object to the lack of a proper foundation and subsequently take advantage of that error when a timely objection could have permitted the proper foundation to be laid.
>
> As noted above, [the defendant] did not object during the deposition when [the scientist] was testifying as to the weight of the substances that she tested. As a result, the trial court properly admitted the evidence even though the State had not elicited testimony about the calibration of the scale.

*Id*. (citations omitted).

[17] Here, the State questioned Ivanyo as follows with respect to the accuracy of her results concerning the weight of the cocaine collected from Roberts's rented room:

Q. And [what] was your conclusion with regard to Item 1?

A. State's Exhibit 1, four bags were examined, and each were found to contain cocaine, a controlled substance, and had a net weight of zero point three-three grams.

Q. And with regard then to State's Exhibit 2, what was your conclusion?

A. Item 2 was found to contain cocaine, a controlled substance, and had a net weight of ten point zero-zero grams plus or minus point zero-four grams.

Q. Okay, and what, what does the point zero-four grams indicate? Why, why is that there?

A. There's some drugs that have a weight threshold. For example, cocaine, there's a different charge if it's below ten grams and above ten grams. So ten grams is kind of the magic number.

Q. Okay.

A. So we have to include the, the measurement certainty of the balance in that because it could be all the way up to ten point zero-four and as low as nine point nine-six. So anywhere in that range is where the weight could lie.

Q. Because on your, on your *scientifically calibrated scale* at the Indiana State Police lab, what did that reading come out to?

A. The reading read ten point zero-zero grams.

Q. Okay. So you're trying to be as accurate as possible. You say it's plus or minus four one-hundredths of a gram; is that right?

A. Correct.

Q. But with regards to then with the weight between the combination of State's Exhibit 1 and 2, it puts it well over ten grams; is that correct?

A. That's correct.

State's Ex. 8 (emphasis added).

[18] Roberts did not object when the State characterized Ivanyo's scale as "scientifically calibrated," or at any time thereafter during the deposition. *Id*. Nor did he avail himself of the opportunity to question Ivanyo as to the calibration of her scale or her testimony concerning the margin of error. By waiting until trial to challenge this foundational issue, he waived this issue for consideration on appeal. *See Konopasek v. State*, 946 N.E.2d 23, 27 (Ind. 2011) (failure to object to admission of evidence normally results in waiver and precludes appellate review). Even so, the challenged evidence was cumulative of other evidence, *see* State's Exhibit 6 (certificate of analysis), and therefore would be considered harmless error. *See Harrison*, 32 N.E.3d at 254 (if erroneously admitted evidence was cumulative of other evidence, admission was harmless, not reversible, error). Roberts has failed to establish an abuse of discretion in admitting Ivanyo's deposition.

## Section 2 – The evidence is sufficient to support Roberts's convictions.

[19] Roberts maintains that the evidence is insufficient to support his convictions. When reviewing a challenge to the sufficiency of evidence, we neither reweigh

evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*. It is therefore not necessary that the evidence "overcome every reasonable hypothesis of innocence." *Id*. (citation omitted).

[20] Roberts was convicted of level 2 felony dealing in cocaine and class A misdemeanor dealing in marijuana. To find Roberts guilty of the former, the State was required to prove beyond a reasonable doubt that he possessed with intent to deliver cocaine in an amount weighing at least ten grams. Ind. Code § 35-48-4-1(a)(2), -(e)(1). To establish that Roberts committed the latter, the State was required to prove that he possessed marijuana with intent to deliver it. Ind. Code § 35-48-4-10(a)(2).

[21] With respect to the quantity of cocaine recovered from Roberts's room, the certificate of analysis as well as forensic scientist Ivanyo's deposition testimony established its total weight to be just under twelve grams, i.e., 10 grams plus 1.32 grams (0.33 grams x 4) plus 0.58 grams. State's Exs. 6, 8. This exceeds the ten-gram threshold weight to establish the level 2 felony offense of dealing in cocaine.

[22] The State charged both offenses as "possess[ion] with intent to deliver." Because Roberts was not caught red-handed with the contraband on his person,

the State was required to establish that he constructively possessed it. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011).

> When the State cannot show actual possession, a conviction for possessing contraband may rest instead on proof of constructive possession. A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it.

> A trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item. We allow this inference even when that possessory interest is not exclusive.

> A trier of fact may likewise infer that a defendant had the intent to maintain dominion and control over contraband from the defendant's possessory interest in the premises, even when that possessory interest is not exclusive. When that possessory interest is not exclusive, however, the State must support this second inference with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item. We have previously identified some possible examples, including (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns.

*Id*. at 174-75 (citations omitted).

[23] Roberts claims that he did not maintain dominion and control over his rented room. The record shows that he had been renting the room with his wife for approximately two weeks. As a lessee of the room, he had a possessory interest in the premises sufficient to support an inference that he was capable of maintaining dominion and control over it. *Gray*, 957 N.E.2d at 174. To the extent that he cites photographs depicting pink decorations in the room as evidence that he did not control the room's environment, he invites us to reweigh evidence and reassess witness credibility, which we may not and will not do.

[24] As for Roberts's intent to maintain dominion and control, we note that all the contraband was found in close proximity to Roberts's person and his personal belongings. When police arrived, the room had a strong smell of burnt marijuana, and Roberts was present in the room, sitting on the bed. On the headboard, in plain view, were burnt marijuana blunts. The photographic exhibits show that the premises rented by Roberts and his wife comprised a small to medium-sized bedroom. Nearly every part of the room was either within arm's reach or within a few steps. Large quantities of drugs neatly packaged for sale were nestled, along with dealers' tools, inside the dresser just steps from where Roberts was sitting. Though he made no furtive gestures or incriminating remarks to police at the time, his incriminating statements in his extracted text messages also implicate him as a drug dealer. Roberts had the intent to maintain dominion and control over his inventory.

In sum, the presence and proximity of the drugs and paraphernalia to Roberts, the quantity and packaging of the drugs, and the extracted text messages combine to support a reasonable inference that Roberts possessed the drugs with intent to deal them, not merely use them. The evidence most favorable to the verdicts is sufficient to support Roberts's convictions. Accordingly, we affirm.

Affirmed.

Baker, J., and Barnes, J., concur.